UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                                    :
VERINT SYSTEMS INC. and                             :
VERINT AMERICAS INC.                                :
                                                    :
                        Plaintiffs,                 :
                                                    :
            - against -                             :
                                                    :
RED BOX RECORDERS LTD.,                             :
                                                    :
                        Defendant.                  :
                                                    X
------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1 4 16

**OPINION AND ORDER**

**14-cv-5403(SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Verint Systems Inc. and Verint Americas Inc. (together "Verint")

assert that Red Box Recorders LTD. ("Red Box") has infringed on seven patents –

U.S. Patent Nos. 5,790,798; 6,510,220; 7,203,285; 7,774,854; 8,189,763;

RE43,324; and RE43,386 (collectively, the "Patents-in-Suit") – obtained between

1998 and 2012.[1]  The Patents-in-Suit specify both hardware and software that

enable companies to record, monitor, analyze, and secure electronic

communications.[2]  The technologies described by the Patents-in-Suit would allow,

---

[1]      *See* Complaint ¶ 20.

[2]      *See id.* ¶¶ 18-19.

for example, a call center using Verint's products to capture, secure, and analyze large amounts of data for quality assurance purposes and integrate what is happening on a particular employee's computer with what is occurring on the phone.  The allegedly infringing products, various "Quantify" brand products, are Red Box products that perform similar functions for call centers.[3]

The present dispute centers on the construction of twelve claim terms across all seven patents.[4]  Verint proposes constructions for each of the twelve terms.  Red Box proposes no constructions and instead argues that all twelve claim terms are invalid for indefiniteness.  For eleven of these terms, Red Box argues that they are found in means-plus-function ("MPF") claims, and these claims are invalid for failing to disclose an adequate structure.

## II.    BACKGROUND

Verint seeks a declaration of infringement under Section 27 of Article

---

[3]      *See id.* ¶¶ 23-24.

[4]      At the Markman Hearing, the parties agreed to the construction of one term.  This construction and the agreed upon constructions are appended to this Opinion.  *See* 11/11/15 Transcript of Markman Hearing ("Markman Tr.") at 128-29.  In addition, Red Box concedes that the term "data analysis engine," which appears in claim 18 of the '324 patent, "was inadvertently included" in the parties' Joint Claim Construction Chart.  Red Box Recorders Ltd.'s Responsive Claim Construction Brief ("Red Box Br.") at 4 n. 5.  I therefore adopt Verint's proposed construction which is uncontested.

35 of the United States Code.[5]  In response, Red Box asserts two counterclaims seeking (1) a declaratory judgment of non-infringement and (2) a declaratory judgment of invalidity of the Patents-in-Suit.[6]

On November 11, 2015, this Court held a Markman Hearing on the construction of the disputed claim terms.  Below are excerpts of the relevant claims with the disputed terms highlighted.

### A.   The '798 Patent:  "Method and Apparatus for Simultaneously Monitoring Computer User Screen and Telephone Activity from a Remote Location"

This patent describes an invention that allows for, in relevant part, the "simultaneous[] monitoring [of] the on-screen and telephone activities of an employee's workstation."[7]  Such a device may allow for easier "training and assistance to those using such workstations" by creating a synchronous record of the on-screen and telephone activity.[8]  Red Box argues that the use of terms of degree – "substantial" and "substantially" – as modifiers for the synchronization of these activities make claims 2 and 3 indefinite.[9]

---

[5]      *See* Complaint ¶¶ 30-43.

[6]      *See* Answer, Red Box's Counterclaims ¶¶ 11-16.

[7]      '798 patent, col. 3, ll. 20-22.

[8]      *Id*. at col. 1, ll. 12-13.

[9]      *See* Red Box Br. at 20-24.

2. A method of monitoring, on a monitoring workstation, on-screen activities of a monitored computer workstation having a display screen and a telephone extension, said method comprising:

> A) determining sequential localized changed screen regions which correspond to at least two sequential screen changes;
>
> B) recording a telephone conversation occurring during said screen changes; and
>
> C) playing back said telephone conversation recording in *substantial synchronization* with said sequential screen changes *substantially as they both happened in real time*, to allow one at said monitoring workstation to simultaneously view on-screen activities and listen to telephone conversations *substantially as they occurred* at said monitored workstation.

3. A method of monitoring, on a monitoring workstation, sequential on-screen activities of a monitored computer workstation. having a display screen and a telephone extension, said method comprising:

> (A) recording data corresponding to two actual sequential screen changes occurring at said monitored workstation and storing said screen change-related data;
>
> (B) recording data corresponding to audio telephone conversation occurring at said monitored workstation during said two actual sequential screen changes and storing said audio telephone conversation-related data; and
>
> (C) subsequent to steps "A" and "B", playing back, with the use of said screen change-related data and said audio telephone conversation-related data, said audio telephone conversation in *substantial synchronization* with said sequential screen changes as they both happened in real time at said monitored workstation, to allow one at said monitoring workstation to simultaneously view and hear on-screen and telephone activities *substantially as they occurred* at said monitored workstation.[10]

**B.    The '220 Patent:  "Method and Apparatus for Simultaneously Monitoring Computer User Screen and Telephone Activity from a Remote Location"**

---

[10]    '798 patent, col. 18, ll. 16-56.

The '220 patent shares the same specification as the '798 patent and provides the same synching functionality although the language of the relevant claims differs slightly.  Red Box again argues that "substantial" and "substantially" as modifiers for the synchronization make the claims indefinite.[11]

> 2. A method of monitoring, on a monitoring workstation, sequential on-screen activities of a monitored computer workstation having a display screen, its own operating system, and a telephone extension, said method comprising:
>
>> . . .
>>
>> (C) playing back said telephone conversation recording in *substantial synchronization* with said at least two sequential screen changes *substantially as they both happened in real time*, to allow one at said monitoring computer workstation to simultaneously view on-screen activities and listen to telephone conversations *substantially as they occurred* at said monitored computer workstation.
>
> 3. A method of monitoring, on a monitoring workstation, sequential on-screen activities of a monitored computer workstation having display screen, its own operating system, and a telephone extension, said method comprising:
>
>> . . .
>>
>> (C) subsequent to steps "A" and "B", playing back, with the use of said screen change-related data and said audio telephone conversation-related data, said audio telephone conversation in *substantial synchronization* with said two actual sequential screen changes as they both happened in real time at said monitored workstation, to allow one at said monitoring workstation to simultaneously view and hear on-screen and telephone activities *substantially as they occurred* at said monitored workstation.[12]

---

[11]    *See* Red Box Br. at 20-24.

[12]    '220 patent, col. 18, ll. 11-56.

**C.     The '285 Patent:  "System and Method for Recording Voice and the Data Entered by a Call Center Agent and Retrieval of These Communication Streams for Analysis or Correction"**

The '285 patent describes a system for improving the "recording and analysis" of call center communications.[13]  The system scores parts of calls "automatically" to provide "better statistical significance with less manpower," as well as providing a graphical user interface to assist in manual review.[14]  In part, this system is comprised of a "recorder" for collecting the relevant communications and a "first computer application" that reconstructs these communications for review.[15]  Red Box asserts that the terms "at least one recorder operative" and "a first computer application operative" as used in claim 13 are nonce terms invoking means-plus-function claiming and that claim 13 is therefore invalid because the specification does not provide sufficient structure for the terms.[16]

> 13. A communications recording and analysis system comprising:
> *at least one recorder operative* to record voice information associated with a communication, screen content information

---

[13]     '285 patent, col. 4, ll. 23-24.

[14]     *Id*. at col. 5, ll. 33-34; col. 6, ll. 37-46.

[15]     *Id.* at col. 14, ll. 31-49.

[16]     Red Box Br. at 8-10.

6

associated with the communication, and input/output information associated with the communication and with a computer from which the screen content was acquired; and

*a first computer application operative* to access the voice information, the screen content and the input/output information and to construct an integrated real-time data stream comprising the voice information, the screen content information and the input/output information;

wherein the integrated real-time data stream is configured to enable progress of the communication to be reconstructed such that screen content information and input/output information is correlated with the voice information of the communication.[17]

### D.   The '763 Patent:  "System and Method for Recording Voice and the Data Entered by a Call Center Agent and Retrieval of These Communication Streams for Analysis or Correction"

The '763 patent shares an identical specification with the '285 patent. In addition to challenging the terms "a recorder operative" and "a first computer application operative" as indefinite, Red Box also argues that claims 6 and 7 which refer to a "second computer application operative" to score the communications also invoke means-plus-function claiming and are likewise indefinite.[18]

1. A communications system comprising:

*a recorder operative* to record information associated with a communication;

*a first computer application operative* to provide a graphical user interface configured to present an integrated view of a portion of the communication recorded by the recorder, *the first computer application being further operative* to construct an integrated data

---

[17]   '285 patent, col. 14, ll. 31-49.

[18]   *See* Red Box Br. at 10-12.

stream comprising voice information and state information corresponding to events that occurred during the communication; wherein the voice information and state information forming the integrated data stream are presented in the graphical user interface as the integrated view containing a first visualization of the portion of the communication and a second visualization of at least one event that occurred during the communication, the second visualization overlaying on the first visualization.

6. The system of claim 1, further comprising:
    *a second computer application operative* to automatically score at least a portion of the communication that was recorded.

7. The system of claim 1, wherein at least a portion of the information recorded is voice information corresponding to the communication, and the system further comprises *a second computer application operative* to automatically and selectively perform voice recognition analysis on at least a portion of the voice information.[19]

### E.   The '854 Patent:  "Systems and Methods for Protecting Information"

The '854 patent describes a system for "prevent[ing] unauthorized access to information" such as a customer's social security and credit card numbers.[20]  This is accomplished by "selectively terminating recording" or "deleting, obfuscating, masking and/or encrypting" the sensitive information.[21] Red Box challenges the terms "monitoring system operative" and "recording

---

[19]    '763 patent, col. 13, ll. 28-44; col. 14, ll. 6-16.

[20]    '854 patent, col. 2, ll. 40-41.

[21]    *Id*. at col. 2, ll. 43, 51-52.

device operative" as used in claim 17 as means-plus-function claims and asserts

they are invalid as indefinite.[22]

> 17. A system for protecting information provided to an agent via a communication network, said system comprising:
>> a communication *monitoring system operative* to monitor an interactive communication responsive to an agent request via a communication network and electronically identify information contained in the communication that is to be protected; and
>> *a recording device operative* to record at least a portion of the communication;
>> wherein the communication *monitoring system is further operative* to provide instructions to the *recording device* responsive to electronically identifying the information that is to be protected such that unauthorized access to the information is prevented.[23]

## F.   The '324 Patent:  "VOIP Voice Interaction Monitor"

The '324 patent describes a system for monitoring and reviewing call center communications similar to the '285 and '763 patents.  For example, the system "by analysing a range of parameters of the signals representing traffic such as speech, data or video, patterns, trends and anomalies . . . can be readily identified" for quality assurance purposes.[24]  Red Box challenges three terms used in claim 39 as nonce terms invoking means-plus-function claiming and indefinite

---

[22]    *See* Red Box Br. at 12-15.

[23]    '854 patent, col. 10, ll. 49-62.

[24]    '324 patent, col. 2, ll. 51-54.

9

for failing to disclose adequate corresponding structure: "data switch operable,"

"monitoring device operable," and "data store operable."[25]

> 39. A recording system for capturing and recording audio data packets transmitted across a data network, comprising:
>> *a data switch operable* to receive a plurality of call setup requests, requesting to establish a voice data session between a calling party and a called party, the voice data session comprising audio data packets communicated between a calling party and a called party via a data network;
>> *a monitoring device operable* to capture the audio data packets received by the *data switch*, wherein the monitor is operable to identify a call to which the audio data packets belong, and to associate the audio data packets to a voice interaction session; and
>> a *data store operable* to interface with the monitor and to record at least a portion of the received audio data packets to a record associated with the voice interaction session.[26]

## G. The '386 Patent: "Communication Management System for Network-Based Telephones"

The '386 patent shares much of the same specification and purpose as the '324 patent, although the claim language differs. Red Box argues the terms "monitoring device" and "analysis module" as used in claim 18 invoke means-plus-function claiming and are indefinite.[27]

> 18. A system to manage communications over a communications network that includes an exchange, the system comprising:

---

[25]     *See* Red Box Br. at 15-17.

[26]     '324 patent, col. 12, ll. 44-60.

[27]     *See* Red Box Br. at 17-18.

*a monitoring device* configured to connect the system to the communications network and to receive data packets from the communications network;

*an analysis module* configured to receive an identifier tagged onto the data packets so as to identify the data packets, such that the identified data packets form at least a portion of the traffic stream and that data packets are selected data packets;

a recorder configured to receive the selected data packets and to store the selected data packets, such that the selected data packets are stored data packets; a data store configured to receive and to store the stored data packets from the recorder, such that said at least a portion of the traffic stream is stored; a link between the exchange and the recorder configured to transfer information related to the data packets from the exchange to the recorder.[28]

## III.   APPLICABLE LAW

### A.   Claim Construction

Claim construction is a question of law, the purpose of which is to determine what is covered by the patent's claims.[29]   "'[T]he construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims.'"[30]   The ultimate inquiry is how a "person of ordinary skill in the art in question at the time

---

[28]      '386 patent, col. 10, l. 65 - col. 11, l. 25.

[29]      *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384, 390-91 (1996).

[30]      *Embrex, Inc. v. Service Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting *Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991)).

of the invention, *i.e.*, as of the effective filing date of the patent application," would understand the claim term.[31]

There are two types of evidence to be considered during claim construction: intrinsic and extrinsic.[32]  *First*, claims are to be construed in light of the intrinsic record which includes the claim language itself, the specification, and prosecution history.  Courts first consider the "words of the claims themselves . . . to define the scope of the patented invention."[33]  A claim term is presumed to possess its ordinary and customary meaning in view of both the temporal and technological context in which it arose unless the patent indicates otherwise.[34]

*Second*, a court may also consider extrinsic evidence, "which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."[35]  In particular, technical dictionaries may help "a court to better understand the underlying technology and

---

[31]     *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

[32]     *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015).

[33]     *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[34]     *See Phillips*, 415 F.3d at 1313.

[35]     *Id.* at 1317.

the way in which one of skill in the art might use the claim terms."[36]  However,

"[e]xtrinsic evidence may not be used 'to contradict claim meaning that is

unambiguous in light of the intrinsic evidence.'"[37]

### B.    Means-Plus-Function Claims

Means-plus-function claiming "occurs when a claim term is drafted in

a manner that invokes 35 U.S.C. section 112, para. 6."[38]  This provision allows

"patentees to express a claim limitation by reciting a function to be performed

rather than by reciting structure for performing that function."[39]  The ambiguity

comes at the cost of constraining the reach of the claim.  The "scope of coverage

[is restricted] to only the structure, materials, or acts described in the specification

as corresponding to the claimed function and equivalents thereof."[40]  "Whether

certain claim language invokes 35 U.S.C. § 112, ¶ 6 is an exercise in claim

construction" and is therefore appropriately considered at this stage.[41]

---

[36]    *Id.* at 1318.

[37]    *Summit 6*, 802 F.3d at 1290 (quoting *Phillips*, 415 F.3d at 1317).

[38]    *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).

[39]    *Id*.

[40]    *Id*. at 1348.

[41]    *Personalized Media Commc'ns, LLC v. International Trade Comm'n*, 161 F.3d 696, 702 (Fed. Cir. 1998).

In determining whether a claim is an MPF claim, a court first looks at the language of the claim to see whether the term "means" is actually used. Failure to use the word "means" – as is the case with all of the terms at issue here – creates a rebuttable presumption that § 112 ¶ 6 does not apply. Importantly, *Williamson v. Citrix Online, LLC* weakened this presumption. The presumption was formerly "strong and not readily overcome."[42] The *Williamson* court discarded this heightened presumption standard because it shifted the balance struck by Congress in passing section 112.[43]

"The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure."[44] The presumption may be overcome "if the challenger

---

[42]    *Williamson*, 792 F.3d at 1349.

[43]    *See id*. at 1347.

[44]    *Id*. (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)). The qualifier "sufficiently" is important for this case as Verint frequently argues with reference to the old presumption standard – that the claim limitation must be "essentially [] devoid of anything that can be construed as structure." *Flo Healthcare Sols., LLC v. Kappos*, 697 F.3d 1367, 1374 (Fed. Cir. 2012). Under the newly articulated standard, the limitation may reference a tangible object or concept but still be expressed in functional language without sufficient structure to prevent the presumption from being overcome. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1373 (Fed. Cir. 2015) (finding the term "compliance mechanism" had corresponding structure but that "the description of the structure to which Media Rights points is far less detailed" than required to prevent the court from construing the claim as MPF).

14

demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"[45]  "The limitation need not connote a single, specific structure; rather, it may describe a class of structures."[46]

   The Federal Circuit has made clear that even though a claim may not use the traditional "means for" construction, certain "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite

---

[45] *Williamson*, 792 F.3d at 1347 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).  The parties dispute whether every word in the phrases at issue should be construed by this Court.  For example, Verint contends that for the term phrase "recording device operative" only "recording device" requires construction.  Verint Systems Inc.'s and Verint Americas Inc.'s Opening Claim Construction Brief ("Verint Br.") at 4.  Red Box argues that the entirety of the claim language should be construed.  *See* Red Box Br. at 4 n. 4.  The parties are talking past each other on this point.  For the initial issue of whether means-plus-function claiming applies, the claim element is viewed in its entirety beyond just the relevant phrase.  *See Williamson*, 792 F.3d at 1350 ("We begin with the observation that the claim limitation in question is not merely the introductory phrase 'distributed learning control module,' but the entire passage.").  However, if this Court determines that means-plus-function claiming does not apply, then it should only construe the terms that require elaboration.  *See Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1377 (Fed. Cir. 2005) (discussing whether the term "interrupt" requires construction or whether it was given its ordinary meaning).

[46] *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1300 (Fed. Cir. 2014) (overruled on strength of presumption grounds by *Williamson*).

structure' and therefore may invoke § 112, para. 6."[47]  At the same time, it has

made clear that simply because a term is defined functionally does not necessarily

mean it is devoid of structure because many terms take their name from their

function, *e.g.*, "brake, clamp, screwdriver, and lock."[48]

      If a court determines that the claims at issue are MPF claims, a court

must then inquire whether these claims "satisfy the definiteness requirement of §

112 ¶ 2."[49]  Contrary to Verint's assertion that Red Box inappropriately attempts to

"bootstrap an indefiniteness challenge onto this claim construction proceeding,"[50]

"a court's determination of the structure that corresponds to a particular

means-plus-function limitation is indeed a matter of claim construction."[51]

---

[47]    *Williamson*, 792 F.3d at 1350 (quoting *Massachusetts Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).

[48]    *Greenberg*, 91 F.3d at 1583.

[49]    *EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015) (citing *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001)).

[50]    Verint Br. at 1.

[51]    *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999).  *Accord ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012) ("indefiniteness [under § 112] is a question of law and in effect part of claim construction"); *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) ("if the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then . . . the claim is simply invalid").

The definiteness determination requires a court "'to construe the disputed claim term by identifying the corresponding structure, material, or acts described in the specification to which the claim term will be limited.'"[52]  The specification "must disclose adequate corresponding structure to perform all of the claimed functions."[53]  If a court is unable to identify structure sufficient to perform every function claimed, the claim is indefinite.[54]  Finally, indefiniteness must be proven by "clear and convincing evidence" because patents are entitled to a presumption of validity that is not readily overcome.[55]

In the case of computer-implemented MPF claims, a court must first determine whether the functions claimed can be performed by "'any general purpose computer without special programming.'"[56]  Any general purpose computer programmed with a particular algorithm for performing a function becomes a special purpose computer when it invokes "any functionality that is not

---

[52]    *Media Rights*, 800 F.3d at 1374 (quoting *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014)).

[53]    *Id.* (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318-19 (Fed. Cir. 2012)).

[54]    *Noah*, 675 F.3d at 1318.

[55]    *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246 (2011) (citing *Radio Corp. of Am. v. Radio Eng'g Labs.*, 293 U.S. 1, 8 (1934)).

[56]    *EON Corp.*, 785 F.3d at 623 (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)).

17

'coextensive' with a microprocessor."[57]

When the function claimed may not be performed by any microprocessor, the structure disclosed may not be just a "general purpose computer" or "software" writ large.[58] The Federal Circuit has made clear that "when a patentee invokes means-plus-function claiming to recite a software function, it accedes to the reciprocal obligation of disclosing a sufficient algorithm as corresponding structure."[59] An algorithm may be disclosed "in many forms, including flow charts, a series of specific steps, mathematical formula, prose, and so on."[60] Regardless of how the algorithm is conveyed, it must be "a step-by-step procedure [] for performing the claimed function."[61] If the specification "discloses no algorithm, the skilled artisan's knowledge is irrelevant."[62] However, "[w]here the specification discloses an algorithm that the accused infringer contends is

---

[57]     *Id.*

[58]      *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1384 (Fed. Cir. 2009) (citing *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008)).

[59]     *EON Corp.*, 785 F.3d at 623.

[60]     *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014) (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)).

[61]     *Id.* at 1379.

[62]     *EON Corp.*, 785 F.3d at 624 (citing *Noah*, 675 F.3d at 1313).

inadequate, we judge the disclosure's sufficiency based on the skilled artisan's perspective."[63]  Importantly, "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed."[64]

### C.   Definiteness of Claim Terms

As noted, Red Box also challenges claims 2 and 3 of the '798 and '220 patents as indefinite – despite not invoking MPF claiming – because they use terms of degree.  The definiteness determination in this context differs.  "When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.'"[65]  In this context, the Supreme Court recently clarified in *Nautilus, Inc. v. Biosig Instruments, Inc.* that to be sufficiently definite under section 112, para. 2 "a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty."[66]  The Federal Circuit has

---

[63]      *Id.*

[64]      *Williamson*, 792 F.3d at 1351.

[65]      *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) (quoting *Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984)).

[66]      134 S. Ct. 2120, 2129 (2014).

since elaborated that this standard requires that there be "objective boundaries for those of skill in the art," "[a]lthough absolute or mathematical precision is not required."[67] As with the definiteness inquiry for MPF claims, invalidity must be proven by clear and convincing evidence.[68]

## IV.   DISCUSSION

I begin by noting that all of the claim terms discussed below refer to computer-implemented functions that require special purpose computers. The functions claimed are plainly not of the sort allowed by the "narrow" exception for general purpose computers, and Verint does not contest this point in its briefs.[69]

Verint does contend, however, that Red Box is incapable of proving invalidity because it did not define who a person of ordinary skill is or present expert testimony in the context of the at-issue patents.[70] This argument misstates the applicable law. While the Federal Circuit has admonished that defining a

---

[67]   *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 59 (2015) (finding the phrase "unobtrusive manner" to be indefinite).

[68]   *See Microsoft Corp*, 131 S. Ct. at 2246.

[69]   *EON Corp.*, 785 F.3d at 621 (noting that the exception to the algorithm requirement is limited to the "basic 'processing,' 'receiving,' and 'storing'" functions performed by all computers).

[70]   Verint Systems Inc.'s and Verint Americas Inc's Claim Construction Reply Brief ("Verint Repl.") at 3, 5.

person of ordinary skill in the art is typically necessary to administer the

definiteness test because terms are construed from the skilled artist's perspective,[71]

it has also made clear that expert testimony is not a per se requirement and that

when a specification is devoid of structure – as Red Box contends – the skilled

artisan is unnecessary to find the claim indefinite.[72]  As noted, for computer-

implemented MPF claims the Federal Circuit has outlined two distinct situations:

*first*, there may be an algorithm disclosed but challenged as insufficient to perform

all of the functions or *second*, there may be no algorithm disclosed at all.[73]  In the

former case, a person of ordinary skill in the art is needed to determine sufficiency

of the structure, but in the latter case expert testimony is unnecessary.[74]

---

[71]     *See AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007) (noting that "the district court did not specify the proficiency of the hypothetical person of ordinary skill in the art that is essential to administering the definiteness test").

[72]     *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) ("We do not state a per se rule that expert testimony is required to prove infringement when the art is complex."); *EON Corp.*, 785 F.3d at 623 ("[W]e have repeatedly and unequivocally rejected this argument: a person of ordinary skill in the art plays no role whatsoever in determining whether an algorithm must be disclosed as structure for a functional claim element." (citing *Noah*, 675 F.3d at 1313)).

[73]     *See Noah*, 675 F.3d at 1313.

[74]     *See id.*  It also logically follows from this that a person of ordinary skill in the art is not needed to determine whether a computer-implemented function refers to a general purpose computer or a specific purpose computer as

Here, Verint has provided a chart that purports to show the algorithm that performs each function of each claim.[75]  As such, the dichotomous algorithm analysis is not necessary for testing the sufficiency of one algorithm against many functions because Verint takes the position that each function is performed by a distinct algorithm.  Whether an algorithm is disclosed may be analyzed separately for each claimed function.

## A. Claim 13 of the '285 Patent: "A First Computer Application Operative"

Red Box contends claim 13 invokes MPF claiming because the term "computer application" does not provide sufficiently definite structure to limit the claim in any meaningful way.[76]  Verint argues not that the claim provides structure but rather the term "computer application" itself connotes structure to a skilled artist.  Verint refers to the *IBM Dictionary of Computing* 3 (10th Ed. 1994) which defines an "application" as "[a] collection of software components used to perform

---

Verint contends.  *See* Markman Tr. at 94-96.

[75]     *See* Exhibit 1 ("Algorithm Chart") to Second Declaration of Ryan N. Miller, plaintiffs' counsel, in Support of Verint Systems Inc. and Verint Americas Inc.

[76]     Red Box Br. at 10.

specific types of user-oriented work on a computer."[77]

This argument is unavailing.  Claim 13 follows the pattern of MPF claims but provides insufficient structure to limit the claim meaningfully.  The "first computer application" is "operative" to perform two functions: (1) "*to access* the voice information, the screen content and the input/output information" and (2) "*to construct* an integrated real-time data stream comprising the voice information, the screen content information and the input/output information."[78]  The claim then elaborates that this data stream is "configured *to enable* progress of the communication to be reconstructed such that screen content information and input/output information is correlated with the voice information of the communication."[79]  No additional structural cues are provided.

The term "computer application," while defined in a technical dictionary as a "collection of software components used to perform specific types of user-oriented work on a computer," fails to provide sufficient additional

---

[77]     Exhibit 4 ("IBM Dictionary") to Declaration of Ryan N. Miller in Support of Verint Systems Inc. and Verint Americas Inc. at 3.  Verint chooses to quote the second definition of "application" while the first – "[t]he use to which an information processing system is put; for example, a payroll application, an airline reservation application, a network application" – makes clear that applications typically refer to "special purpose computers."

[78]     '285 patent, col. 14, ll. 31-44 (emphasis added).

[79]     *Id.*, col. 14, ll. 45-49 (emphasis added).

structure that would not otherwise be implicitly understood if the claim were defined as "means for performing" the aforementioned computer-implemented functions.[80]  Indeed, in many of the Federal Circuit cases interpreting "computer-implemented means-plus-function claims" the court understood the means claimed to be software executed by a computer.[81]  The fact that the "means for" language was already understood by the court to implicitly refer to a sub-class of MPF claims composed of two structural elements – programs executed by a microprocessor – makes clear that explicitly claiming a "computer application" does not add sufficiently definite structure.

Having determined that claim 13 is an MPF claim, I now turn to whether the patent discloses an algorithm to perform each of the claimed functions. I find that the specifications of the '285 patent fail to disclose any type of step-by-

---

[80]   While not dispositive, the Federal Circuit has endorsed this type of counterfactual reasoning.  *See Williamson*, 792 F.3d at 1350 ("Here, the word 'module' does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used.").

[81]   *See, e.g.*, *Williamson*, 792 F.3d at 1350 (noting that "'module' is simply a generic description for software or hardware that performs a specified function"); *Finisar Corp.*, 523 F.3d at 1340 ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough."); *Blackboard*, 574 F.3d at 1383 (noting that "the access control manager, according to Blackboard, is any computer-related device or program that performs the function of access control").

step procedure.

Analysis of the single function "construct an integrated real-time data stream" suffices to make this point because "where a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all."[82]  Verint argues that the part of the specification for "Call Flow Recordings" provides an algorithm[83] and attempts to highlight the "algorithmic structure"[84] despite the lack of an explicit step-by-step procedure in the specification.  This portion of the specification assumes the existence of "real-time data stream[s]" and describes the characteristics of such streams that might make the construction of an integrated stream possible but contains no such step-by-step procedure for doing so.[85]  Independent claim 13 and dependent claims 14 and 16[86] of the '285 patent are

---

[82]     *Noah*, 675 F.3d at 1318.

[83]     *See* Algorithm Chart at 5.

[84]      Markman Tr. at 57.

[85]     '285 patent, col. 9, l. 33 - col. 10, l. 3.

[86]     Although dependent claims may still be valid despite a finding that the independent claim is indefinite, *see Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1297 (Fed. Cir. 2005), the dependent claims here require use of the indefinite "first computer application" and are invalid as well.  *See, e.g.*, *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999) ("Because dependent claims 2–8 and 10 stand or fall with independent claim 1, we affirm the

invalid for indefiniteness.[87]

### B.  Claim 1 of the '763 Patent: "First Computer Application Operative"

The '763 and '285 patents share identical specifications, but tellingly claim different, albeit similar, functions for the "first computer application."  In the '763 patent, the "first computer application" is "operative" to perform two functions: (1) "*to provide* a graphical user interface configured to present an integrated view of a portion of the communication recorded by the recorder" and (2) "*to construct* an integrated data stream comprising voice information and state information corresponding to events that occurred during the communication."[88]  The small difference in wording for the second function does nothing to change the above analysis, particularly when Verint once again cites to the identical language of the specification for "Call Flow Recordings."[89]  Independent claim 1 and

---

district court's judgment that these claims are also invalid."); *Energizer Holdings, Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1369 (Fed. Cir. 2006) ("The Commission held invalid independent claim 1 and dependent claims 2–7, for the claims all contain the usage to which the Commission objected.").

[87]    Where, as here, one of the challenged terms within the claim renders the claim invalid, I decline to analyze the other challenged terms.  While claim 15 also depends on claim 13, Red Box only asserts that these particular dependent claims are invalid.  *See* Red Box Br. at 10.

[88]    '763 patent, col. 13, ll. 28-37 (emphasis added).

[89]    *See* Algorithm Chart at 11-12.

dependent claims 2-5, 7, 8, 14, and 15 of the '763 patent are invalid for indefiniteness.[90]

### C.    Claim 17 of the '854 Patent: "Monitoring System Operative"

The "monitoring system" at-issue in the '854 patent does not recite sufficient structure to avoid MPF claiming.  This system, described fully as a "communication monitoring system," is "operative" to perform three functions described in claim 17: (1) "*to monitor* an interactive communication responsive to an agent request via a communication network,*" (2) "*[to] electronically identify* information contained in the communication that is to be protected," and (3) *"to provide* instructions to the recording device responsive to electronically identifying the information that is to be protected such that unauthorized access to the information is prevented."[91]  The classic MPF claiming pattern is present.  A non-structural "means" – the "communication monitoring system" – is claimed as "operative" for performing associated functions.

---

[90]    Red Box only asserts that these particular dependent claims are invalid.  *See* Red Box Br. at 12.

[91]    '854 patent, col. 10, ll. 51-62 (emphasis added).

The term "system," although qualified as a "communication monitoring system," does not impart a sufficient structure.[92]  "System" standing alone is a nonce word that does not describe a structure that could perform the listed functions and the modifier "communication monitoring" provides a functional description of the system but no structure.  Neither does the description of the "monitoring system" in the specification point to a sufficiently definite structure to save claim 17 from being construed as MPF.  Figure 4 of the specification shows the "monitoring system" as a box within the memory of a computer alongside the computer's operating system.  Reference to the specification reveals that the "monitoring system" is stored here because the monitoring system is software executing on the computer.[93]

---

[92]   *See Williamson*, 792 F.3d at 1350 (noting that "[t]he prefix 'distributed learning control' does not impart structure into the term 'module'").

[93]   *See* '854 patent, col. 7, ll. 30-33. ("FIG. 4 is a schematic diagram illustrating an embodiment of a computing device that is configured to perform the functionality associated with an embodiment of a monitoring system.").

28



**FIG. 4**

Once again the "monitoring system" refers to a computer-implemented MPF yet the specification provides no algorithm for performing the claimed functions. The specification only attempts to explain what the "monitoring system" does at a high level – analyzes communications to detect certain events and prevents the recording of confidential information.[94]

A close analysis of the claimed algorithm for performing the "electronically identify information" function fails to reveal a sufficiently detailed step-by-step procedure. Verint contends that "analyzing the communication" is a step taken in the algorithm for performing this function and the specification vaguely gestures to "various methodologies" such as an undisclosed "voice

---

[94]     *See id.* col. 4, l. 24 - col. 5, l. 36.

recognition algorithm."[95]  The cited portion of the specification also outlines various "events" that may serve as "triggers" and "based upon the occurrence of one or more triggers . . . at least a portion of the information that is to be protected will not be available for accessing because that information is not retained in a long term storage memory device."[96]

Such description amounts to nothing more than a basic explanation of what the "monitoring system" could do.  Section 112 para. 2 exists "to ensure that 'the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the scope of the patentee's right to exclude.'"[97]  To hold that this high level of abstraction suffices to describe a step-by-step procedure would undermine the purpose of the definiteness requirement. A skilled artisan may be able to program the monitoring system given the specification, "[b]ut the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is

---

[95]     Algorithm Chart at 15 (citing '854 patent, col. 4, l. 33).

[96]     '854 patent, col. 5, ll. 8-12.

[97]     *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009) (quoting *Honeywell Int'l, Inc. v. International Trade Comm'n*, 341 F.3d 1332, 1339 (Fed. Cir. 2003)).

disclosed."[98]  Independent claim 17 and dependent claims 22 and 23, which rely on the functions of claim 17, are invalid for indefiniteness.[99]

### D.    Claim 39 of the '324 Patent: "Monitoring Device Operable"

The term "monitoring device" invokes MPF claiming because it uses the nonce term "device" without providing sufficient additional structure.[100]  Once more the claim limitation is structured as a nonce term – "monitoring device" – "operable" to perform three functions: (1) "*to capture* the audio data packets received by the data switch," (2) "*to identify* a call to which the audio data packets belong," and (3) "*to associate* the audio data packets to a voice interaction session."[101]

Verint argues that "[t]he monitoring device is defined in the claim" as performing the three functions listed and these functions in turn "are performed

---

[98]    *Williamson*, 792 F.3d at 1351 (citing *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013)).

[99]    Once more, Red Box only asserts that these particular dependent claims are invalid.  *See* Red Box Br. at 14.

[100]    *See Williamson*, 792 F.3d at 1350 (noting the term "device" is typically a nonce word).

[101]    '324 patent, col. 12, ll. 52-56 (emphasis added).

using the defined structure of data switched packets."[102]  Once again, this argument

is not persuasive.  That the "monitoring device" performs functions by interacting

with data packets that have a defined structure does not provide a structure to the

"monitoring device" where none is otherwise disclosed.[103]  Verint's proposed

construction concedes as much, redefining the term "monitoring device" as a

"device that observes and records activities within a data processing system for

analysis."[104]  Both the claim itself and Verint's construction follow the format of

MPF claims – the nonce term "device" followed by functions.

The claim clearly refers to computer-implemented functions but again

the specification does not provide an algorithm for performing the claimed

functions.  Indeed, the term "monitoring device" does not appear anywhere in the

specification much less with an associated algorithm.  The failure to even reference

this device in the specification raises enough doubt about whether a person of

---

[102]      Verint Repl. at 9.

[103]      *See Function Media*, 708 F.3d at 1319 ("But the issue is not whether
the '045 patent discloses a physical structure over which the PGP transmits, it is
whether the patent discloses the algorithm by which the PGP performs the
transmission function.").

[104]      Verint Br. at 14.

ordinary skill in the art could "'understand what structure corresponds to the means limitation.'"[105]

Nonetheless, for the "identify" function Verint claims there is an algorithm disclosed in the "Summary of the Invention" which states in a conclusory manner that "the present invention advantageously allows for the improved monitoring of traffic so as to identify which one(s) of a possible plurality of data or voice interactions might warrant further investigation."[106]  Verint then cites irrelevant portions of the specification discussing parameters that may be measured yet fails to explain how identification of packets might occur.[107]  Setting aside the fact that these portions of the specification are pages apart, no algorithm is revealed even when pasting them together.  Driving home this point, Verint cites to the identical portions of the specification for the "associate" function, yet there is no description of how the device performs such an association.[108]  Claim 39 of the '324 patent is invalid for indefiniteness.

--------

[105]     *Function Media*, 708 F.3d at 1317 (quoting *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011)).

[106]     Algorithm Chart at 30 (citing '324 patent, col. 2, ll. 43-45).

[107]     *See id*. at 30-31.

[108]     *See id*. at 31-32.

**E.     Claim 18 of the '386 Patent: "An Analysis Module Configured to"**

This claim invokes MPF claiming as well.  "Module" is the exact nonce word at issue in *Williamson*, and adding the term "analysis" imparts no structure just as adding "distributed learning control" failed to do so in *Williamson*.[109]  The "analysis module" is "configured to" perform a single function:  "*receive* an identifier tagged onto the data packets so as to identify the data packets, such that the identified data packets form at least a portion of the traffic stream and that data packets are selected data packets."[110]  The module is a black box nonce term that performs a function consistent with the format of MPF claiming.

Verint contends that the "analysis module" contains inherent structure because the term "data analysis" is defined in a technical dictionary as the "systematic investigation of the data and their flow in a real or planned system."[111] Verint's immediate resort to a technical dictionary for an entirely different term reveals the lack of structure in the specification.  Indeed, the term "analysis module" does not appear at all in the specification which instead variously refers to

---

[109]     *Williamson*, 792 F.3d at 1351.

[110]     '386 patent, col. 11, ll. 4-8 (emphasis added).

[111]     IBM Dictionary at 5.

a "recording and analysis system"[112] and an "analysis engine."[113]  Crediting the

definition of "data analysis" as the definition for the added term "analysis" still

only describes the claimed function at a high level but fails to offer corresponding

structure sufficient to take claim 18 out of the ambit of section 112, para. 6.

The specification does not provide an algorithm for performing the

claimed function.  Verint points to the identical specification language analyzed in

claim 39 of the '324 patent.[114]  All that can be gleaned is the existence of

parameters that "can be combined" and that the "monitored data may be 'tagged'

with additional information."[115]  No algorithm exists, pertinent or otherwise.

Claim 18 of the '386 patent is invalid for indefiniteness.[116]

### F.  The '798 and '220 Patents: "Substantial" Terms

---

[112]    '386 patent, col. 6, ll. 21-22.

[113]    *Id.* at col. 7, l. 39.

[114]    *See* Algorithm Chart at 36-37.  In addition Verint quotes portions of the "Summary of the Invention" that provide no algorithm but refer vaguely to "means for identifying the source of the two-way traffic includes means for receiving an identifier tagged on to the traffic so as to identify its source . . . Alternatively, means can be provided within the telecommunications monitoring apparatus for determining the terminal number."  '386 patent, col. 4, ll. 37-46.

[115]    '386 patent, col. 4, l. 4; col. 7, ll. 57-58.

[116]    Red Box does not challenge the dependent claims as indefinite.  *See* Red Box Br. at 18.

I now turn to the only claims not challenged as MPF claims.[117]  Red Box challenges the use of the phrases "substantial synchronization," "substantially as they both happened," and "substantially as they occurred" (collectively the "Substantial Terms") as indefinite because the patents do not draw a temporal bright line between what is "non-substantial versus substantial synchronization."[118] Here, the relevant synchronization is between the telephone conversation audio and the computer screen display of the monitored workstation.[119]  Verint argues that these claims are clearly limited by the purpose of the specification which is to allow for "close enough synchronization that a viewer would process playback of the combination as synchronized."[120]

Red Box's quest for absolute certainty must fail.  The Supreme Court has made clear that "the definiteness requirement must take into account the inherent limitations of language," so understood, definiteness "mandates clarity,

---

[117]    The '798 and '220 patents are appropriately discussed together because they use nearly identical language in the relevant claims and corresponding specifications at issue.

[118]    Red Box Br. at 22.

[119]    *See* '798 patent, col. 2, ll. 22-32; '220 patent, col. 2, ll. 30-40.

[120]    Verint Br. at 17.

36

while recognizing that absolute precision is unattainable."[121]  At the Markman

Hearing, Red Box suggested that the term "completely synched" would provide

sufficient precision, but at the linguistic depths that Red Box attempts to parse the

Substantial Terms even that construction would fail.[122]  In its brief, Red Box

suggests that the synchronization requirement must be parsed down to milliseconds

(0.001 seconds) – an imperceptible amount of time.[123]  In this case, Red Box

demands unreasonable certainty.

Pre-*Nautilus*, the Federal Circuit made clear that there is no per se rule

regarding terms of degree because "[e]xpressions such as 'substantially' are used

in patent documents when warranted by the nature of the invention, in order to

accommodate the minor variations that may be appropriate to secure the

invention."[124]  Post-*Nautilus*, courts have construed claims using the term

---

[121]    *Nautilus*, 134 S. Ct. at 2128-29.

[122]    Markman Tr. at 116.

[123]    Red Box Br. at 22.

[124]    *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002).

"substantially" as both definite[125] and indefinite[126] depending on the boundaries provided by the specification.

Terms of degree may be used "to describe the invention with precision appropriate to the technology."[127]  The use of the Substantial Terms is warranted here to account for latency between the data to be synched, system lag, or other potential variance inherent in applying the claimed invention on different computing systems and across telecommunications layouts.

This imprecision is not unbounded.  The patents provide a clear functional scope to the term:  "to allow one at the monitoring workstation to simultaneously monitor on-screen and telephone conversations occurring at the

---

[125]    *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1002-03 (Fed. Cir. 2015) (finding the term "substantially centered" – referencing a phone feature which would cause portions of a document "to be enlarged and 'substantially centered' on the display" –  sufficiently definite); *Advanced Aerospace Techs., Inc. v. United States*, No. 12-85 C, 2015 WL 7690024, at *10 (Ct. Cl. Nov. 24, 2015) (finding "substantially arrested" – referring to the movement of an aircraft – to be definite because the "purpose of the invention, . . . *i.e.*, to capture an unmanned aircraft," provided reasonable certainty).

[126]    *See, e.g.*, *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 14 Civ. 2972, 2015 WL 1034275, at *14-16 (S.D. Tex. Mar. 10, 2015) (finding the term "substantially prevent communication interference between the first and second pairs" – referencing electrical interference – indefinite because it did not have a boundary in the specification and did not refer to a physical impossibility).

[127]    *Verve*, 311 F.3d at 1120.

monitored workstation."[128]  The modifier "substantial" indicates that the system

may not be perfect but usefully analogizes that "these activities may be played

back much as one would play back the video tape of a television program, that is

the on-screen and synchronized voice activities" to indicate the synchronous goal

of the claimed invention.[129]  In much the same way a dubbed movie may not be

perfectly synched, so long as it is "substantially synched," the viewer can still

determine how the audio and video should match.

        Having determined that the Substantial Terms are not indefinite, I now

conclude that the terms do not require construction.  Verint's proposed

construction proves this.  Verint does little but reword the Substantial Terms to

define them as "audio and video plays substantially as they occur in real-time."[130]

The terms as used in the claims take their ordinary meaning and do not use

otherwise terse language that would not be readily understood by a lay person.

## V.      CONCLUSION

---

[128]      '798 patent, col. 3, ll. 5-9; '220 patent, col. 3, ll. 12-15.

[129]      '798 patent, col. 4, ll. 41-44; '220 col. 4, ll. 50-53.

[130]      Verint Br. at 16.

For the reasons stated, the Court finds that the Substantial Terms do not require construction and the following claims are invalid for indefiniteness.

- Patent No. 7,203,285: claims 13, 14, and 16.

- Patent No. 8,189,763: claims 1, 2-5, 7, 8, 14, and 15.

- Patent No. 7,774,854: claims 17, 22, and 23.

- Patent No. RE43,324: claim 39.

- Patent No. RE43,386: claim 18.

I also adopt the following constructions which are stipulated to or uncontested.

| Claim Term | Patent(s) | Stipulated Construction |
| --- | --- | --- |
| "localized changed screen regions" | '798 and '220 patents | screen updates which occur within a bounded region sized less than the full display screen |
| "by use of said monitored workstation operating system" | '220 patent | by use of said monitored workstation operating system such as OS/2 or Windows[131] |

---

[131]     The parties agreed to this construction during the Markman Hearing. *See* Markman Tr. at 128-29.

| | | |
|---|---|---|
| "input/output information" | '285 patent | information used to implicitly infer call progress |
| "progress of the communication" | '285 patent | the state of the call at any particular time |
| "information that is to be protected" | '854 patent | information that would be considered sensitive to a customer |
| "electronically identifying" | '854 patent | automatically analyzing a communication with respect to a set of rules |
| "preventing unauthorized access" | '854 patent | prohibit or preclude replay of protected information |
| "data analysis engine" | '324 patent | a computer application used for the systematic investigation of data flow |

A conference is scheduled for January 28, 2016 at 4pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             January 4, 2016

41

**- Appearances -**

**Counsel for Verint Systems Inc. and Verint Americas Inc.:**

Ernest E. Badway, Esq.
Ryan N. Miller, Esq.
Fox Rothschild LLP
100 Park Avenue - Suite 1500
New York, New York 10017
(212) 878-7900

**Counsel for Red Box Recorders LTD.:**

Deepro R. Mukerjee, Esq.
Christopher L. McArdle, Esq.
Lance A. Soderstrom, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400

Christopher B. Prescott, Esq.
252 Buttery Road
New Canaan, Connecticut 06840
(917) 755-7643