**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

VERINT SYSTEMS INC. and VERINT
AMERICAS INC.,

                Plaintiffs,

                v.

RED BOX RECORDERS LTD.,

                Defendant.

-------------------------------------------------------------x

:
:
:    14cv05403 (SAS)
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF**
**RED BOX'S PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 3

STANDARD OF REVIEW ............................................................................... 4

ARGUMENT .................................................................................................. 5

I.      Verint's Indirect Infringement Claims Fail as a Matter of Law. ........... 5

        A.      There are no plausible allegations that Red Box had "actual
                knowledge" of the patents-in-suit. ............................................. 5

                1.      Verint has not adequately pleaded that Red Box had actual
                        knowledge of the '798, '220, '324, and '386 patents. ................. 6

                2.      Red Box's alleged knowledge of the reissue patents cannot
                        stem from documents predating the patents themselves. ............... 9

                3.      The Amended Complaint does not plausibly allege that Red
                        Box was willfully blind as to the '324, '386, '285, '854,
                        and '763 patents. ......................................................... 11

        B.      Verint has not sufficiently pleaded the "specific intent" needed for
                active inducement. ..................................................................... 14

II.     The Court Should also Dismiss the Claims of Willful Infringement. .................. 16

CONCLUSION .............................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                      <u>Page(s)</u>

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
   No. 13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ................................10

*Apeldyn Corp. v. AU Optronics Corp.*,
   831 F. Supp. 2d 817 (D. Del. 2011) ..................................................................8, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................4, 5, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................4, 13

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
   No. Civ. A. 11-1175, 2012 WL 6968938 (D. Del. July 18, 2012) ..............................8

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006).......................................................2, 5, 14

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed.Cir.2010)..............................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   131 S. Ct. 2060 (2011) .....................................................................12, 13

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
   897 F.2d 508 (Fed. Cir. 1990).........................................................2, 16

*LaserDynamics USA, LLC v. Cinram Grp.*,
   2015 WL 6657258 (S.D.N.Y. 2015)................................................15, 16

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).................................................................4

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002)..................................................8

*MONEC Holding AG v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012) ................................................. *passim*

*Otsuka Pharm. Co. v. Zydus Pharm. USA*,
   No. CV 14-3168, 2015 WL 5950091 (D.N.J. Oct. 13, 2015).....................................15

*Pecorino v. Vutec Corp.*,
   934 F. Supp. 2d 422 (E.D.N.Y. 2012) .................................................5, 15

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)............................................................................8

*Regents of Univ. of Minn. v. AT&T Mobility LLC*,
    No. 14-4666, 2015 WL 5719465 (D. Minn. Sept. 29, 2015).........................................13

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
    950 F. Supp. 2d 876 (E.D. Va. 2013) .......................................................................8, 9

*Sentius Int'l, LLC v. Microsoft Corp.*,
    78 F. Supp. 3d 967 (N.D. Cal. 2015) ..........................................................................10

*State Industries, Inc. v. AO Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985).....................................................................................9

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013).....................................................................................2

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
    No. C 715, 2011 WL 3946581 (N.D. Ill. Sept. 2, 2011)...............................................6

*Unisone Strategic IP, Inc. v. Life Techs. Corp.*,
    No. 3:13-CV-1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013)...................14, 15, 16

*Unisone Strategic IP v. Life Technologies Corporation*
    No. 3:13-CV-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) ....................14

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C 11-06638, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ...........9, 10, 11, 12, 13

## Statutes and Rules

Fed. R. Civ. P. 8....................................................................................................................13

Fed. R. Civ. P. 12(b)(6)..........................................................................................................4

35 U.S.C. § 271(b) ..................................................................................................................2

35 U.S.C. § 271(c) ..................................................................................................................5

**INTRODUCTION**

Until now, Verint has asserted only direct infringement against Red Box.  Long ago, after Verint served the initial Complaint, Red Box notified Verint, on December 8, 2014, that Red Box would move to dismiss any allegations of indirect infringement.  Verint responded on December 15, 2014, confirming that Verint had "not made any [such] allegations."  With that, the parties moved forward, exchanging infringement and invalidity contentions, engaging in claim construction, and conducting substantial, burdensome discovery—all with the clear understanding that only *direct* infringement of the patents-in-suit was at issue.[1]

Recently, the Court entered its January 5, 2016 Claim Construction Order, invaliding Verint's asserted system claims.  With only method claims remaining in the case, that ruling eliminated Verint's prospect of receiving damages for any purported direct infringement by Red Box.  As a result, Verint needed alternative theories of infringement.  On January 25, 2016—less than three weeks after Your Honor's Order—Verint notified Red Box of its intention to file an Amended Complaint and provided a draft thereof (D.E. 40-1).  At the pre-motion conference on February 9, 2016, both the Court and counsel for Red Box pointed out numerous deficiencies in Verint's draft Amended Complaint.  *See, e.g.,* February 9, 2016 Transcript ("Tr.") at 18:25-20:7.

Recognizing these deficiencies, on February 16, 2016, Verint filed the current Amended Complaint, which differs significantly from the draft provided to Red Box in January.  The revised Amended Complaint, which is now Verint's third bite at the apple, attempts to allege that Red Box

---

[1] The patents-in-suit are U.S. Patent No. 5,790,798 (the "'798 patent"), U.S. Patent No. 6,510,220 (the "'220 patent"), U.S. Patent No. 7,774,854 (the "'854 patent"), U.S. Patent No. 8,189,763 (the "'763 patent"), U.S. Patent No. RE43,324 (the "'324 patent"), and U.S. Patent No. RE43,386 (the "'386 patent").  As Verint noted, U.S. Patent No. 7,203,285 (the "'285 patent") is no longer asserted.  (Am. Compl. ¶ 26.)

*indirectly* infringes the patents-in-suit—the very claim that Verint had disavowed in December 2014. With its new claims, Verint seeks an end run around Your Honor's Order.[2]

Setting aside Verint's undue delay and questionable motives, even a cursory review of the Amended Complaint in light of applicable legal standards demonstrates why Verint did not assert the new causes of action in the first place. The reason is simple: Verint had and still has no claim for indirect or willful infringement. Chief among the shortcomings of both claims is Verint's inability to plausibly allege that Red Box had actual knowledge of the patents-in-suit. *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013) ("Liability for induced or contributory infringement under § 271(b) or (c) requires . . . actual knowledge of the existence of the patent and that it is infringed."); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge.").

Moreover, Verint has not, and cannot, sufficiently plead the "specific intent" needed for inducement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) ("[K]nowledge of the acts alleged to constitute infringement is not enough. . . . [S]pecific intent and action to induce infringement must be proven.") (internal quotations omitted). Thus, because the Amended Complaint cannot state a claim for either indirect or willful infringement, Verint's newly concocted counts should be dismissed.

---

[2] At the February 9, 2016 hearing, the Court detected as much—indicating that it was "concerned about undue delay and [] also about dilatory motive in the sense [that the new claims] seem to be a reaction to the claim construction decision." Tr. at 4. The Court then added that, based on its initial impression of the request to amend the complaint, "there's undue delay" and "there's probably bad faith." *Id.*

## BACKGROUND

At every opportunity, Verint has delayed this litigation.  Verint first filed this suit on July 17, 2014, but did not serve Red Box until November 14, 2014—exactly 120 days after filing the original Complaint.  Then, following the Court's February 4, 2015 Scheduling Order, Verint did little to prosecute its case.  In fact, even though discovery commenced on February 13, 2015, Verint did not provide Red Box with a draft of the Joint Electronic Discovery Submission until October, and only did so after Red Box's prompting.  Still, the delays continued.

More recently, after Red Box undertook great efforts to substantially complete its production of documents before the then-deadline of December 18, 2015, Verint filed a last-minute request on December 17 for an extension of the document production deadline.  Despite receiving that extension, Verint still provided a majority of their production—over 700,000 pages—a week after the extended deadline had come and gone.  Now, Verint's Amended Complaint—adding indirect infringement which Verint expressly disavowed fourteen months ago—is simply the latest chapter in a long history of undue delay.

As before, the Amended Complaint includes claims of direct infringement.  (Am. Compl. ¶ 26.) That much has not changed.  What the Amended Complaint adds is: (1) a claim that "Red Box infringes the Patents-in-Suit by actively inducing direct infringement by third parties" by "encouraging its customers" to directly infringe the asserted patents (*id.* ¶¶ 29, 31); and (2) a claim that "Red Box's acts of infringement have been carried out deliberately and willfully, without the consent of Verint, at least with respect to the '798 patent, the '220 patent, the '324 patent, and the '386 patent" (*id.* ¶ 50).  The Amended Complaint—which attaches and relies on a handful of documents produced by Red Box during discovery—further asserts that "Red Box had actual knowledge of the '798, '220, '324, and '386 patents prior to the filing of the original complaint."

3

(*Id.* ¶¶ 36, 51.)  Alternatively, Verint alleges that Red Box was "willfully blind to the existence of the '324 patent and the '386 patent from a time prior to the filing of the original complaint."  (*Id.* ¶ 40.)  But there is no claim that Red Box had actual, pre-suit knowledge of the '285, '854, or '763 patents.  For these three, Verint alleges only that Red Box was "willfully blind" to their existence. (*Id.* ¶¶ 40, 47).

Despite its reservations, the Court allowed Verint to file the Amended Complaint.  And, as the Court anticipated, Red Box submits this Partial Motion to Dismiss, requesting that the new causes of action be dismissed for failure to state a claim under Rule 12(b)(6).

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  There must be more than the "mere possibility of misconduct" (*Iqbal*, 556 U.S. at 679):  The allegations must "nudge[] the[] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

All reasonable inferences are made in the plaintiff's favor, but the Court need not accept as true "conclusions of law or unwarranted deductions of fact."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174-75 (2d Cir. 2005).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*

## ARGUMENT

I.   **Verint's Indirect Infringement Claims Fail as a Matter of Law.**

To state a claim for induced infringement under 35 U.S.C. § 271(b), the plaintiff must allege "facts showing, first, that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 447 (E.D.N.Y. 2012) (internal quotations omitted). The knowing-inducement requirement "necessarily includes the requirement that [the alleged infringer] knew of the patent." *DSU Med. Corp.*, 471 F.3d at 1304. Since Verint cannot allege that Red Box had the requisite knowledge or intent, the new indirect infringement claims fail.[3]

### A.   There are no plausible allegations that Red Box had "actual knowledge" of the patents-in-suit.

Verint cannot make out a plausible claim that Red Box had actual pre-suit knowledge of the patents at issue. The critical question is "whether [Verint] has plead sufficient facts . . . for the Court to *infer* that [Red Box] had knowledge of [Verint's] patents and that their products infringed on those patents." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *3 (N.D. Ill. Sept. 2, 2011) (emphasis in original). The answer is no, Verint has not.

---

[3] In paragraph 32 of the Amended Complaint, Verint alleges that "Red Box *contributes to* the direct infringement of its customers by providing software that is specially adapted for use in systems and performing methods covered by one or more of the Patents-in-Suit." (Am. Compl. ¶ 32 (emphasis added).) It is unclear whether Verint means to assert a claim for contributory infringement under 35 U.S.C. § 271(c). Regardless, a claim for contributory infringement imposes the same knowledge requirement as a claim for induced infringement. *See Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 448 (E.D.N.Y. 2012) ("Accordingly, a plaintiff asserting a claim under a theory of contributory infringement under 35 U.S.C. § 271(c) must allege facts plausibly showing that . . . the alleged infringer had knowledge of the patent . . . .") (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)). The missing knowledge element means that all indirect infringement claims (induced or contributory) fail as a matter of law.

1.      Verint has not adequately pleaded that Red Box had actual knowledge of the '798, '220, '324, and '386 patents.

To support the conclusion that Red Box had actual knowledge of the '798, '220, '324, and '386 patents, Verint points to a stray document ██████████████████████████████████. (Am. Compl. ¶ 36 & Ex. L & M.)  But Verint's actual-knowledge theory crumbles on review of this email and attachment.  Verint and the Amended Complaint are grasping at straws.

First, the context of the 2009 email string is key.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

From there, the content of the seventeen-page attachment serves only to underscore just how implausible Verint's claim of actual knowledge really is.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

6



Were the rule otherwise, anytime an isolated document containing even a single patent reference is sent to an alleged infringer—or whenever a one-off reference appears in any document that resides somewhere in a defendant's files—the patent holder would be able to state a claim that the defendant had actual knowledge.

That is not and cannot be the law.

. *See, e.g., Rembrandt Soc. Media, LP v. Facebook, Inc.,*

---

[4] This document (Exhibit L) lists only two of the now-six patents-in-suit.

950 F. Supp. 2d 876, 883 (E.D. Va. 2013) (rejecting argument that knowledge of patent-in-suit could be inferred by the fact that the defendant purchased a patent that cited the patent-in-suit and was served with a lawsuit on another patent that listed the patent-in-suit); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. Civ. A. 11-1175, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (holding that plaintiff had not plausibly alleged actual notice even though the alleged infringer held three patent applications for which the patent examiner asserted the patent-in-suit to be prior art). Verint has not "explained sufficiently" how ████████████████████████ ████████████████████████ make[s] plausible that [Red Box] had actual knowledge." *Id.*

Given the context of the email thread and its attachment, there is no plausibility that Mr. Jones or Red Box had actual knowledge of any of the patents-in-suit. While Verint tries to weave the Amended Complaint's exhibits into its narrative, the documents are clear on their face. "If these documents contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations of the amended complaint." *See, e.g., Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 183-84 (S.D.N.Y. 2000); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2002).

Moreover, the plausibility analysis must properly account for the relevant universe of information: ████████████████████████████████ ████████████████████████████████ ████████. *See, e.g., Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817, 831 (D. Del. 2011) (rejecting "transitive knowledge" theory that would "embrace the hundreds, if not thousands, of listed patents that would be generated"); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012) ("it is not a plausible argument to charge Defendants

with knowledge of the '678 patent among hundreds of cases involving their competitors' products"; "MONEC fails to explain how Defendants 'would have obtained' selective knowledge of a specific patent in a specific case, without wading through the pool of more than two hundred cases involving different patents"). The ████████████████████████████████ does not "give[] rise to anything more than a conceivable possibility of knowledge of the [patents], rather than a plausible inference that [Red Box] possessed such knowledge." *Rembrandt*, 950 F. Supp. 2d at 883. ████████████████████████████████ ███████████████████████████████. This cannot satisfy the pleading standards, which require *plausibility* not *possibility*. The document upon which Verint relies, particularly given its context, is not sufficient to allege plausible, actual knowledge.[5]

> 2.  Red Box's alleged knowledge of the reissue patents cannot stem from documents predating the patents themselves.

The problems with Verint's attempt to portray actual knowledge do not end there. Verint's position is even less plausible for the reissue patents, *i.e.*, the '324 and '386 patents. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5] At the February 9, 2016 hearing, the Court suggested that Red Box "of course" knew of the patents-in-suit "because Verint has 80 percent of its market" and "there's no way that Red Box wouldn't have at least inferred the existence of these patents long ago." Tr. at 3. ████ ████  Moreover, Red Box respectfully submits that actual knowledge of the specific patents-in-suit requires more than that. *See, e.g.*, *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) ("This Court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent."); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (holding that knowledge of the particular patent at issue cannot be inferred based on the alleged infringer's knowledge, "more generally," of the plaintiff's "patent portfolio").

███████ (Am. Compl. Ex. L at 2.)  That should come as no surprise as these reissue patents would

not issue for about another three years.[6]  *See State Industries, Inc. v. AO Smith Corp.*, 751 F.2d

1226, 1236 (Fed. Cir. 1985) ("Filing an application is no guarantee any patent will issue . . . . What

the scope of claims in patents that do issue will be is something totally unforeseeable."); *Affinity*

*Labs of Tex., LLC v. Toyota Motor N. Am.*, No. 13-CV-365, 2014 WL 2892285, at *6 (W.D. Tex.

May 12, 2014) (holding that defendant's awareness of pending application for patent-in-suit could

not "make plausible knowledge of the patent for purposes of inducing infringement").

Nevertheless, Verint evidently plans to argue that ███████   ███████ a *third* patent—U.S.

Patent 6,404,857 (the "'857 patent")—was "sufficient to impart actual knowledge of the '324 and

'386 patents to Red Box." (Am. Compl. ¶ 39.)  To be sure, the '857 patent is not among the

patents-in-suit.  But, according to Verint, the '857 patent "is in the priority chain of the '324 and

'386 patents," since "the '324 and '386 patents are reissues of U.S. Patent No. 6,757,361, which

itself is a division of the '857 patent."  (*Id.* ¶ 37.)

████████████████████████████████████

████████████████████████ Verint's confusing theory finds no

support in the case law.  *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638,

2012 WL 1831543, at *3 n.6 (N.D. Cal. May 18, 2012) (rejecting argument that knowledge of first

patent put potential infringers on notice of second patent that shared a common specification with

the first); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 233 (D. Del. 2012)

("Such speculation falls short of a plausible argument equating knowledge of the '678 patent with

actual knowledge of the patent-in-suit, the reexamined '678 patent."); *Sentius Int'l, LLC v.*

---

[6] Other exhibits to the Amended Complaint (*e.g.*, N, O, and P) fail to satisfy any suggestion that
Red Box was aware of the reissue patents.  Red Box could not have been aware of the reissues as
they had not yet issued as of the dates of those exhibits.

*Microsoft Corp.*, 78 F. Supp. 3d 967, 975 (N.D. Cal. 2015) (holding that there was no basis to infer pre-suit knowledge of reissue patent based on defendant's knowledge of the predecessor patent). "The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents, even if somewhat similar." *Vasudevan*, 2012 WL 1831543, at *3 (emphasis in original).

*Apeldyn Corporation v. AU Optronics Corporation*, 831 F. Supp. 2d 817 (D. Del. 2011) proves the point. There, the patent holder argued that an alleged infringer had pre-suit knowledge of patent #1 because the defendant knew about patent #2, which cited to patents #3 and #4, which on their faces listed patent #1. *Id.* at 831. In rejecting that convoluted, multistep process to impute knowledge, the court noted that the plaintiff "cites no caselaw in support of its 'transitive knowledge' theory." *Id.*; *see also MONEC*, 897 F. Supp. 2d at 233 ("MONEC cites no authority indicating that actual knowledge of an original patent is equivalent to actual knowledge of a reexamined patent, and the relevant case law suggest that drawing such an inference is too tenuous even at the pleading stage."). The decision goes on: "Nor has the court located an example of a finding of constructive knowledge based on the listing of a patent on the face of another patent, twice removed." *Apeldyn*, 831 F. Supp. 2d at 831. Here too, Verint's claim that Red Box knew of the reissue patents based on another patent reference twice removed should be rejected.[7]

      3.      The Amended Complaint does not plausibly allege that Red Box was willfully blind as to the '324, '386, '285, '854, and '763 patents.

Left with no basis to claim actual or even imputed knowledge, Verint argues in the alternative that "Red Box was willfully blind to the existence of the '324 patent and the '386

---

[7] Since Red Box's alleged knowledge of the '857 patent is not a legal substitute for knowledge of the '324 and '386 patents, ██████████████████ cannot salvage Verint's otherwise implausible allegations. (*See* Am. Compl. ¶ 38 & Exh. N.)

patent" as well as the '285, '854, and '763 patents.  (Am. Compl. ¶ 40.) ████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████████████.  Based on these

allegations, Verint contends that "only deliberate action to avoid knowledge on the part of Red

Box could have led to any purported lack of pre-complaint knowledge of the '324 patent; the '386

patent; the '285 patent; the '854 patent; and the '763 patent."  (*Id.* ¶ 47.)  Verint's problem here is

that the Supreme Court has outlined specific requirements for establishing willful blindness for

purposes of indirect infringement.  Verint's allegations fall far short of those requirements.

In *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011), the Supreme Court

held that a plaintiff can plead knowledge for induced infringement by alleging "willful

blindness"—rejecting the earlier, less exacting "deliberate indifference" standard of the Federal

Circuit.  *Id.* at 2068.  The Court explained that a willfully blind defendant is "one who takes

deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be

said to have actually known the critical facts."  *Id.* at 2070-71.  In keeping with that holding, Verint

must allege facts showing that Red Box "(1) subjectively believed there was a high probability a

particular fact existed or was true, and (2) took deliberate actions to avoid learning of that fact."

*Vasudevan Software*, 2012 WL 1831543 at *5 (citing *Global-Tech*, 131 S. Ct. at 2070).  By way

of illustration, in applying the second requirement, the *Global-Tech* Court relied on the facts that

the alleged infringer made a conscious decision to copy only an overseas model of the plaintiff's

product (since it would not bear the U.S. markings) and decided not to inform a patent attorney

that its product was a "knockoff."  *Global-Tech*, 131 S. Ct. at 2071-72.  The Court reasoned that

those deliberate and affirmative actions led to an inference that the defendant took these steps "to

manufacture a claim of plausible deniability." *Id.* Verint has not and cannot allege that Red Box conducted any such deliberate and affirmative actions.

The absence of allegations of such deliberate and affirmative actions supports the dismissal of Verint's Amended Complaint:

> A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*.

*MONEC*, 897 F. Supp. 2d at 230; *Regents of Univ. of Minn. v. AT&T Mobility LLC*, No. 14-4666, 2015 WL 5719465, at *8 (D. Minn. Sept. 29, 2015) ("The University offers no specific allegations as to what deliberate action the Defendants have taken… [I]n order to survive a motion to dismiss, they must point to some type of action on the part of the Defendants from which a jury could conclude the Defendants engaged in willful blindness."). Here, there is a complete failure of the Amended Complaint to identify any affirmative actions taken by Red Box.

It is not enough to simply parrot back the *Global-Tech* standard by accusing Red Box of "taking deliberate actions to avoid a known risk." *Vasudevan Software*, 2012 WL 1831543 at *6. And yet that is precisely what Verint has done, alleging that "only deliberate action to avoid knowledge on the part of Red Box could have led to any purported lack of pre-complaint knowledge." (Am. Compl. ¶ 47.) But what was that deliberate action? The Amended Complaint does not say. Verint "has neglected to identify any affirmative actions taken by [Red Box] to avoid gaining actual knowledge" of the '324, '386, '285, '854, and '763 patents, so there can be no plausible claim of willful blindness. *Vasudevan Software*, 2012 WL 1831543 at *6. Again, Verint's Amended Complaint falls far short of the pleading requirements.

**B.    Verint has not sufficiently pleaded the "specific intent" needed for active inducement.**

Verint cannot allege that Red Box induced third parties to infringe patents that Red Box did not even know about.  That inability, alone, warrants dismissal of the indirect infringement claims.  But even assuming, *arguendo*, that Verint could plausibly allege knowledge (which it cannot), the outcome would be the same.  Inducement requires "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *DSU Med. Corp.*, 471 F.3d at 1306.  Such culpable conduct is entirely absent in this case.

In *Unisone Strategic IP v. Life Technologies Corporation*, the court dismissed an induced infringement claim because, among other reasons, the plaintiff "fail[ed] to sufficiently allege Defendant had the specific intent to induce others to infringe."  No. 3:13-CV-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) (no alleged "facts showing Defendant took affirmative steps to induce others to infringe").  There, the plaintiff argued that the defendant "had the specific intent to encourage its customers and suppliers to infringe the '538 patent directly by (among other things) intentionally encouraging and/or aiding its customers and suppliers to use [defendant's] SCMS software."  *Id.*   More specifically, the allegations urged that defendant "intentionally designs, manufactures, markets, promotes, sells, services, supports (including technical support), provides updated software, and educates its customers and suppliers about its SCMS software."  *Id.*  But the court rejected the plaintiff's position, reasoning that claims about the defendant providing customers "instruction, technical support, and training" were "not sufficient to plausibly infer that Defendant had the specific intent to induce others to infringe."  *Id.*

*MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012) is in agreement with *Unisone*.  There, the District of Delaware held that, "[e]ven if MONEC were able

14

to satisfy the 'actual knowledge' requirement to state a claim for indirect infringement, the first amended complaint does not satisfy the 'intent' prong." *Id.* at 234-35.  It was not enough, the court explained, for the plaintiff to claim induced infringement based on the defendants' "conduct in selling, advertising, supplying and instructing its respective customers on the use of the infringing product." *Id.*  These activities "do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement."[8] *Id.*

That is just the sort of allegation that Verint asserts here.  According to the Amended Complaint, "Red Box actively induces its customers to directly infringe systems and methods covered by one or more of the Patents-in-Suit by encouraging and training those customers to combine software… with telecommunications hardware provided by Red Box or provided by third party vendors."  (Am. Compl. ¶ 31.)  The Amended Complaint's allegations and exhibits purportedly demonstrate that the required encouragement to infringe is found in Red Box's acts to "install, maintain, and offer training in the use of the accused products in the United States." *Id.* But the law on that score is clear.  Allegations that the alleged infringer instructs, trains, and provides technical support to customers on the defendant's products, without more, cannot suffice. *See Unisone*, 2013 WL 5729487 at *3; *MONEC*, 897 F. Supp. 2d at 234-35.

_____

[8] *See also, e.g.*, *Pecorino*, 934 F. Supp. 2d at 447-48 ("[T]he complaint does not plead facts showing that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."); *LaserDynamics USA, LLC v. Cinram Grp.*, No. 15 Civ. 1629, 2015 WL 6657258, at *6 (S.D.N.Y. Oct. 30, 2015) (rejecting indirect infringement claim on allegations that defendants induced by "marketing, selling, and/or offering for sale its replication services, including by providing replication customers instructions, specifications and/or other materials relating to the replication . . . and replication services"); *Otsuka Pharm. Co. v. Zydus Pharm. USA*, No. CV 14-3168, 2015 WL 5950091, at *4-5 (D.N.J. Oct. 13, 2015) (holding that complaint did not "plausibly allege" specific intent or encouraged infringement with allegations that "the labels for [Defendants'] generic products will recommend, suggest, encourage and/or instruct others to use [Defendants'] generic products in a manner that infringes").

Verint's allegations do not plead a specific intent by Red Box to induce infringement "any more than they support the theory that [Red Box] w[as] lawfully soliciting customers to use their services to keep [Red Box's] businesses afloat." *See LaserDynamics*, 2015 WL 6657258 at *6. This, alone, provides an independent basis to reject Verint's induced infringement claims.

## II. The Court Should also Dismiss the Claims of Willful Infringement.

"[A] party cannot be found to have willfully infringed a patent of which the party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). As above, Verint "fails to allege facts establishing that [Red Box] had knowledge" of the patents-in-suit. *Unisone Strategic*, 2013 WL 5729487, at *5. Red Box had no actual knowledge of the patents-in-suit. Nor was it willfully blind to their existence. In the absence of plausible allegations to the contrary, the Court should dismiss the new willful infringement claim along with the indirect infringement claims. *Unisone Strategic*, 2013 WL 5729487 at *5; *MONEC*, 897 F. Supp. 2d at 236 (holding that willful infringement cause of action suffered from the same flaw as induced infringement cause of action).

## CONCLUSION

For the foregoing reasons, the Court should grant Red Box's motion and dismiss Verint's claims for indirect infringement and willful infringement.

16

Dated: New York, New York
         February 26, 2016

                              Respectfully Submitted,

                              By: _____

                              Deepro R. Mukerjee
                              deepro.mukerjee@alston.com
                              Lance Soderstrom
                              lance.soderstrom@alston.com
                              Christopher L. McArdle
                              chris.mcardle@alston.com
                              ALSTON & BIRD LLP
                              90 Park Avenue
                              New York, New York 10016
                              Phone: 212-210-9400
                              Fax: 212-210-9444

                              Christopher B. Prescott
                              cbprescott@outlook.com
                              252 Buttery Road
                              New Canaan, Connecticut 06840
                              Phone: 917-755-7643
                              Fax: 815-377-1232

                              *Counsel for Defendant*
                              *Red Box Recorders LTD*