Ernest Edward Badway, Esq.
Ryan N. Miller, Esq.
**FOX ROTHSCHILD LLP**
100 Park Avenue - Suite 1500
New York, New York 10017
Telephone: 212-878-7900
Fax: 212-692-0940
*Attorneys for Plaintiffs Verint Systems Inc. and Verint Americas Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERINT SYSTEMS INC. and VERINT AMERICAS INC., <br><br>            Plaintiffs, <br><br>    v. <br><br> RED BOX RECORDERS LTD., <br><br>            Defendant. | Case No. 14-cv-5403 (KBF) |

### VERINT SYSTEMS INC. AND VERINT AMERICAS INC.'S OPPOSITION TO RED BOX RECORDERS LTD.'S MOTION FOR SUMMARY JUDGMENT

42091058

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................. 1

II.    THE PATENTS IN SUIT .................................................................................... 2

    A.    The '854 Patent ......................................................................................... 2
    B.    The '324 and '386 Patents ....................................................................... 5
    C.    The '798 and '220 Patents ....................................................................... 7
    D.    The '763 Patent ......................................................................................... 9

III.   STANDARD OF REVIEW ............................................................................... 10

IV.   ARGUMENT ..................................................................................................... 11

    A.    The asserted claims do not preempt a field............................................ 11
    B.    The asserted claims are not directed to abstract concepts...................... 13

V.    The Asserted Claims All Capture Inventive Concepts. .................................... 21

VI.   The Dependent Claims Add Concrete and Inventive Elements to the Claims ................ 22

VII.  Conclusion ....................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S.Ct. 2347 (2014) ...................................................................................11, 12, 13, 16, 21

*Amazon Inc. v Barnsandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ........................................................................................4

*Bilski v. Kappos*,
   561 U.S. 593 (2010) .........................................................................................................12

*In re BRCA1 and BRCA2*,
   774 F.3d 755 (Fed. Cir. 2014) ..........................................................................................12

*ContentGuard Holdings, Inc. v Amazon.com Inc*,
   No.2:13-cv-01112, slip. op. (E.D. Tex, Oct. 5, 2015) ...........................................................12

*ContentGuard Holdings, Inc. v Amazon.com Inc*,
   No.2:13-cv-01112, slip op (E.D. Tex, Oct. 5, 2015) .............................................................17

*Contentguard v. Amazon*,
   No.2:13-cv-01112, slip op (E.D. Tex Oct 5, 2015) ..............................................................21

*DDR Holdings, LLC v. Hotels. Com, LLP*,
   773 F.3d 1245 (Fed. Cir. 2014) ..........................................................................2, 12, 14, 21

*Diamond v. Diehr*,
   450 U.S. 175 (1981) .........................................................................................................12

*DietGoal Innovations LLC v. Bravo Media LL*,
   33 F. Supp. 3d 271, 276 (S.D.N.Y. 2014) *aff'd*, 599 Fed App'x 956 (Fed. Cir.
   2015) ..........................................................................................................................10, 11

*Enfish, LLC v. Microsoft Corp*,
   822 F 3d 1327 (Fed. Cir. 2016) ..........................................................................................1

*Enfish, LLC v. Microsoft Corp.*,
   882 F.3d 1327 (Fed. Cir. 2016) ....................................................................................12, 13

*Gottschalk v. Benson*,
   409 U.S 63 (1972) ............................................................................................................12

*Helios Software, LLC V. SpectorSoft Corp.*,
   No. 12-081-LPS, 2014 WL 4796111 (D. Del Sept. 18, 2014) ..............................12, 16, 18, 19

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)...................................................................1, 6, 12, 13

*Lumen View Tech v. Findthebest.com, Inc.*,
   984 F.Supp. 2d 189 (S.D.N.Y. 2013).......................................................................11

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
   132 S. Ct. 1289 (2012)....................................................................................1, 11, 12, 13

*Motio, Inc. v. BSP Software LLC*,
   154 F.Supp.3d 434, 441 (E.D. Texas 2016)...........................................................22

*SimpleAir, Inc. v Google Inc.*,
   136 F.Supp.3d 745, 750 (E.D. Tex. 2015)...........................................................12, 13, 16, 21

*TNS Media Research, LLC v. Tivo Research and Analytics, Inc.*,
   No. 11-cv-04039, 2016 WL 817447 (S.D.N.Y. Feb. 22, 2016), *vacated by*
   *TNS Media Research, LLC v. Tivo Research and Analytics, Inc.*, No. 11 Civ.
   4039 (SAS) (S.D.N.Y. June 24, 2015)...................................................................10, 11

## Statutes

35 U.S.C. 101...................................................................................................................1, 23

35 U.S.C. §101........................................................................................................4, 10, 11, 12, 13, 21

Indeed, the Patent Act, Section 282(a)...........................................................................10, 11

Patent Law ...................................................................................................................23

## Other Authorities

Dkt. No. 34, "Onion and Order" 1/4/16.....................................................................3, 6

I.      __INTRODUCTION__

Defendant, Red Box Recorders, Ltd. ("Red Box") moves for summary judgment to have 19 claims from six patents declared invalidated under 35 U.S.C. 101.[1]  To succeed Red Box must carry the burden of showing each and every claim is directed to patent ineligible subject matter. Unable to meet this burden, Red Box resorts to broad generalizations about the Patents-in-Suit and the claims therein that ignore critical claim limitations and the specific challenges and problems that the Patents-in-Suit address.  Red Box offers no evidence or expert opinion to support their motion, contending no facts are needed and nothing is relevant but their overgeneralized, mischaracterization of the claims at issue.

As the Federal Circuit recently noted, determining if patent claims are "directed to" patent ineligible subject matter requires more than to "simply ask whether the claims *involve* a patent-ineligible concept" because at some level all inventions "embody, use, reflect, rest upon or apply laws of nature, natural phenomena or abstract ideas. " *Enfish, LLC v. Microsoft Corp*, 822 F 3d 1327, 1335 (Fed. Cir. 2016) (emphasis in original) (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc*., 132 S. Ct. 1289, 1293 (2012)).  Instead, the "directed to" inquiry requires analysis of the claims, "considered in light of the specification" to determine whether their character "as a whole is directed to excluded subject matter." *Id*. (quoting *Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1346 (Fed. Cir. 2015).  Red Box's motion utterly fails to make this analysis, much less carry their burden to demonstrate that each of the 19 claims in the Patents-in-Suit is directed to ineligible subject matter.

---

[1] As noted in Red Box's brief in support of its summary judgment motion  footnote 1  there are 6 patents asserted which for the sake of convenience are referred to by their last 3 numbers and we use that  same naming convention in this brief as adopted in Red Box's brief.

## II.     THE PATENTS IN SUIT

Each of the Patents-in-Suit is directed to specific challenges faced by the operation of call centers at the time of the claimed inventions.  The inventions addressed the specific challenges with claimed systems and methods[2] that used tools, equipment and software available to the industry in new and unique combination of elements.  The patents claim concrete and tangible systems and methods.  While Red Box's motion focuses on the use of existing technology in the inventions, it utterly ignores the new combination of elements that provides the inventive solution reflected in each of the Patents-in-Suit.  See e.g. *DDR Holdings, LLC v. Hotels. Com, LLP*, 773 F.3d 1245, 1258 n. 5 (Fed. Cir. 2014) (upholding validity of computer implemented business method directed to generating composite web pages combining elements of host site and third party sites, noting that "on a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions").  The below summary of the Patents-in-Suit focuses on exemplary claims given time and space constraints of preparing this brief, but a review of each of the other asserted claims of the patents in issue in this motion likewise demonstrates that the patents are not directed to "abstract concepts" but rather are concrete methods of solving specific problems faced in the operation of call centers at the time of invention.

### A.     The '854 Patent

The '854 Patent addressed the unique issue confronted by operators of call centers where, for quality control and order/information receiving purposes, operators of the centers frequently wish to record interactions between agents and callers that are occurring simultaneously over audio and visual (screen data) mediums yet at the same time wish to protect customer

---

[2] Only method claims are currently at issue in this case.

confidential information that may be part of the audio and/or visual (screen data) communication.  The '854 patent teaches the suppression of information by temporarily suspending either voice or (screen) data recording using one of several methods including, automatic control of the recording process to start & stop recording, triggered by designated desktop application events during a session, such as entry into specific pages in the desktop application, or commands from an application to control the recording process via Computer Telephony Integration. *See* '854 specification.  *See also*, Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 13 discussing patent and industry background.  The inventors came up with novel systems and methods (the novelty being confirmed by the patent office grant of the claims) to address this particular issue.  All of the elements of the claims are concrete steps using physical devices and/or computer executable instructions to solve the problem.  For instance, claim 25 of the '854 Patent which is asserted here requires the following elements:

> 25.    A computer-readable medium having a computer program stored thereon, the computer program comprising computer-executable instructions for performing a computer-executed method for protecting information provided to an agent via a communication network, said method comprising:
>
> receiving an interactive communication responsive to an agent request via a communication network, the communication including information that is to be protected;
>
> electronically identifying the information[3] that is to be protected from the communication;
>
> recording at least a portion of the communication; and
>
> preventing unauthorized access to the information such that, if it is determined that the information that is to be protected has been recorded, at least a portion of the information is rendered unintelligible to a user unless that user possesses an authorization to access the information.  (emphasis added)

The claim specifies both the medium in which the steps of the method are performed and the

---

[3] This element has been construed by the Court to mean "automatically analyzing a communication with respect to a set of rules."  Dkt. No. 34, "Onion and Order" ("Claim Construction Order") 1/4/16.

physical steps to be performed.  Each of the above elements comprises a physical step that must

be carried out in an environment specific to call centers.  The claims are concrete and specific,

contrary to Red Box's assertions.  Red Box chose to highlight only the first word or two of each

claim in their brief[4], ignoring key limitations and physical elements of the claims.  In particular,

Red Box failed to address the key limitation of "electronically identifying the information" to be

protected in the '854 Patent, which is the step in all asserted claims of the patent whereby the

recorded information is segregated from what is not to be recorded by automatically analyzing

the communication according to a set of rules as discussed further in the specifications.  *See e.g.*

'854 Patent, Col. 4, ln 24-Col. 5 ln 36[5].  In short, the asserted claims of the '854 Patent are not

directed to abstract concepts but a specific methods for addressing a particular problem

encountered in the call center environment. *See* Exhibit 1 hereto, Declaration of Benedict

Occhiogrosso ¶ 13.  Red Box's brief ignores or glosses over key claims (for example not even

discussing claim 25) and key limitations in clams to make their oversimplified argument.

A quick review of the asserted dependent claims of the '854 Patent underscores that: (1)

the claims are not directed to "abstract concepts," and; (2) they contain inventive concepts.  For

instance, claim 2 of the '854 Patent further specifies that the "electronic identification" is used

specifically to "[stop] the recording during a time which the information that is to be protected is

expected to be provided . . . and then restarting the recording after the time which the

information that is to be protected is expected to be provided."  This concrete step of stopping

and starting the recording in response to electronic identification was not only novel at the time,

---

[4] Note Red Box discussed only claims they considered "representative" but as they are moving to invalidate  all asserted claims under § 101 each claim must be addressed individually.  *Amazon Inc. v Barnsandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (validity analyses "must be performed on a claim-by-claim basis.")

[5] For ease of reference "Col" stands for the column in the patent and "ln" the line in the column so this reference is for column 4, line 24 through column 5, line 36 where the specification discusses details regarding electronic identification of information to be protected.

but is a concrete and specific element that is but one way of solving the problem of protecting confidential information in a call center environment, *see* Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 13.

Similarly dependent clams 3 and 6 of the '854 Patent add additional concrete and inventive steps to protect confidential information by using either "desktop application events" to determine the time for transmitting information that is to be protected. Red Box's argument never addresses the key elements of either the independent or dependents claims, opting instead to gloss over key claims or elements thereof. For instance, Red Box does not directly discuss claim 25, but instead only recites claims 2,3, and 6 without discussing any of the elements set forth therein.

### B.     The '324 and '386 Patents

The inventions of the '324 and '386 Patents, which predate the inventions of the '854 Patent by nearly 9 years, are also directed to specific problems encountered in call centers at the time of the invention in 1997. S*ee* Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 15. At the time, call center activities were growing rapidly, in part due to increasing internet driven business. *Id.* In addition, call centers were beginning to need to find ways to handle communications delivered to the call center in new formats in the form of voice over internet protocol ("VOIP"). The technology challenges related to a call center's handling of VOIP verses traditional analog signals would take more space than available for this brief. However, a key element to understand is that in the VOIP situation, the call center receives information in the form of data packets, which can be received out of order and in bursts of information (i.e. packets) as opposed to the continuous analog voice signal from traditional telephone lines. The inventions claimed in these two patents are directed to systems and methods supporting digital VoIP – based voice recording technology and its integration with VoIP switching systems using

Computer – Telephony integration (CTI).  In particular a data analysis engine is introduced which analyzes  the received VoIP packet stream at the call center  in both real–time or off- line (previously recorded speech).with respect to several parameters (associated with the audio stream) to take specific actions.  Based upon the analysis of the VoIP packet stream, the call in progress can be processed differently, or targeted follow-up with the call center agents can be performed subsequently to manage the receipt of these packets of information at a call center so as to properly direct call traffic to the proper place. *See* Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 15.

A review of an asserted claim from each of the Patents-in-Suit reveals again that the claims are not simply directed to abstract concepts but rather contain concrete steps to manage the receipt and analysis of packetized audio data received at a switch.  See below, for examples of this in claim 18 from the '324 Patent and claim 27 from the '386 Patent (emphasis added to focus on elements that Red Box never addresses).

18.    A method for capturing a telephone interaction, comprising:

receiving **audio data packets at a switch** that are transmitted over a first network, wherein the audio data packets include packet headers and packet bodies;

identifying data within the audio data **packets at a data analysis engine**[6] **that is communicatively connected to the switch by a second n**etwork, the identifying being based **on at least one predetermined parameter associated with a payload** of the audio data packets; and

recording for analysis, at a recorder, any of the received audio data packets that include the at least one predetermined parameter, **wherein the recorder is communicatively connected to the data analysis engine by the second** networ*k*

27.    A method for storing at least a portion of an interaction occurring over a network **between a packet source and a packet destination**, the method comprising the steps of

---

[6] A data analysis engine has been construed by the Court to be a computer application used for systematic investigation of data flow. Dkt. No. 34, "Onion and Order" ("Claim Construction Order") 1/4/16.

> **receiving data packets from the network at a switch**, the data packets containing at least the portion of the interaction comprising one or more of audio data or video data;
>
> communicating the data packets **to a data analysis engine**;
>
> **identifying, at the data analysis engine**, an interaction to which the data packets **belong responsive to information included** within the data packets; and
>
> storing at least **a portion of the interaction contained within the data packets** in a storage device.

Even a cursory review of the above claims, considering all of the elements of the claims and the background in the specification to understand the problem targeted by the inventions, confirms that these claims are not "directed to" abstract concept" of "data recognition and storage" as argued by Red Box, but rather provide specific methods to address a specific problem encountered by call centers at the time of the invention.  Again, the method claims use concrete and specific devices and tools to address a specific problem with a specific method.  That computers and networks are used in performing the method does not mean the claims are directed to an "abstract concept."  As with the '854 Patent, a review of the dependent claims asserted in the '324 Patent further underscores the concrete and inventive nature of the asserted claims, as the asserted dependent claims add concrete elements like "identifying the traffic stream in which a particular audio data packet belongs" and using the data analysis engine to" identify voice communication content in a data packet."

### C.    The '798 and '220 Patents

The '798 and '220 Patents addressed a specific issue faced in call centers in the late nineties where it was not possible to simultaneously monitor the audio call and activity occurring on the agents screen during the call.  *See* Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 14.  Both of these patents address the ability to monitor and record simultaneously the computer screen display (data) and the telephone conversation (voice) of a monitored

workstation.  *See, id.*  The monitoring and recording can occur remotely (and unobtrusively),

from a monitoring workstation connected via a network to the monitored workstation.  The data

and voice information can be played back at a later point in time in synchrony, so that the

recorded voice can be heard while the corresponding screen data is viewed.  This is not an

abstract concept but a real world problem that the inventions addressed.  By way of example,

claim 2 of the '220 Patent provides:

> 2.      A method of monitoring, on a monitoring workstation, sequential on-screen activities of a monitored computer workstation having a display screen, its own operating system, and a telephone extension

> (A)      determining **sequential localized changed screen regions which correspond to at least two sequential screen changes**, by use of said monitored computer workstation operating system;

> (B)      recording a telephone conversation occurring before said screen changes during said screen changes and after said screen changes; and

> (C)      playing **back said telephone conversation recording in a substantial synchronization with said at least two sequential screen changes substantially as they both happened in real time, to allow one at said monitoring computer workstation to simultaneously view on-screen activities and listen telephone conversation's substantially as they occurred at said monitored computer workstatio**n. (emphasis added).

Once again, Red Box's analysis of the above claim focuses solely on the first one or two

words of each element above, completely missing key limitations and the essence of the

inventions, which is undeniably the ability to play back in "substantial synchronization"

activities that occurred simultaneously over the phone call and on a computer station manned by

an agent in a call center.  This inventions is not directed to an "abstract concept" of "monitoring

an employee workstation" as argued by Red Box, but is instead a concrete and specific method

for addressing a real world problem in the operation of call centers at the time of the invention.

*See* Exhibit 1 hereto, Declaration of Benedict Occhiogrosso ¶ 14.  The asserted dependent claims

of each of the '798 and '220 further this point by adding additional concrete and inventive

elements such as tying the recorded data to partial and full local screen changes and using

separate servers for recording data on servers remote from the monitoring stations.

### D.    The '763 Patent

The 763 introduced a Graphical user interface (GUI) that could be used to facilitate easy

retrieval of selected, previously recorded communications streams (typically voice recordings

but other information such as screen data is possible.)  A communications stream is recorded

along with call flow recording (a Progress stream) linked by cross reference to the

communications stream.  The GUI also highlights events that occur during the recording to

facilitate ease of navigation to selected portions of the communication (conversation).  The call

flow recording can be used for a variety of analytic purposes identifying call progress including

annotation of events and scoring of the call (i.e. agent performance).  Progress information of the

call can be derived by analysis of the actual call state (setup dialing, in conversation), screen data

keystrokes entered, mouse actions, words uttered etc.  Through packetization a single integrated

data stream may be created consisting of one or more data streams and state information.  The

'763 Patent addressed the difficulty call centers had in handling massive amounts of information

to perform quality control and analysis of agent/sales representative performance.  At the time of

the invention, current systems used for quality monitoring of sales representative performance

were essentially "manual review of calls" and a "human scoring process" that allowed evaluation

of only a small percentage ("perhaps 5%") of the sales representatives interactions with

customers. '763 Patent Col. 2, ln. 26-30.

The invention provided systems and methods that allow analysis of the full/integrated

communication stream (audio and visual/screen activities) in a manner that allows real time

analysis of the progress and performance of the agent on the call. *See e.g.* '763 Col 4, lns. 33-67.

Again, the claimed methods are not an "abstract concept" put a practical solution to a real

problem.  As an example claim 16 of the '763 Patent which is asserted in this case reads as follows:

16.    A method for analyzing communication streams, the method comprising:

recording information associated with a communication;

**providing a graphical user interface configured to present an integrated view of a portion of the communication** recorded by the recorder;

constructing **an integrated data stream** comprising voice information and state information corresponding to events that occurred during the communication; and

presenting, in the graphical user interface from the integrated data stream, **an integrated view containing a first visualization of the portion of the communication and a second visualization of at least one event that occurred during the communication**, the second visualization overlaying on the first visualization (emphasis added)

Again, Red Box's discussion of this invention omits key elements of the invention such as providing the graphical interface and the integrated data stream to provide integrated visualizations of multiple events during the communication which are fundamental to the invention and are not in any case "abstract concepts" but concrete methods for assisting the call center manager in performing quality control functions.

## III.    <u>STANDARD OF REVIEW</u>

There is no question that a party moving for summary judgment and a party seeking to have patents declared invalid under 35 U.S.C. §101 bears the burden of establishing the claims it seeks to invalidate are ineligible for patent protection.  *See e.g. TNS Media Research, LLC v. Tivo Research and Analytics, Inc.*, No. 11-cv-04039, 2016 WL 817447 at *10 (S.D.N.Y. Feb. 22, 2016), *vacated by TNS Media Research, LLC v. Tivo Research and Analytics, Inc.*, No. 11 Civ. 4039 (SAS) (S.D.N.Y. June 24, 2015) (order vacating grant of summary judgment )*; DietGoal Innovations LLC v. Bravo Media LL,* 33 F. Supp. 3d 271,  276 (S.D.N.Y. 2014) *aff'd*, 599 Fed App'x 956 (Fed. Cir. 2015).  Indeed, the Patent Act, Section 282(a) expressly requires that all

patents are "presumed valid," that "each claim of a patent . . . shall be presumed valid independently of the validity of other claims" and that "the burden of establishing invalidity of a patent or a claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. §282 (a) and *see DietGoal Innovations LLC,* 33 F. Supp. 3d at 277. Other than the recently vacated *TNS Media Research* decision, the level of the burden required by this Court for a movant to establish invalidity under section 101 has been by "clear and convincing evidence." *See e.g. id*; *Lumen View Tech v. Findthebest.com, Inc*., 984 F.Supp. 2d 189, 204 (S.D.N.Y. 2013). With respect to the Court's opinion in the *TNS Media Research* case that there was no presumption of validity for patents challenged under section 101, that decision flies straight in the face of the Patent Statute and overwhelming case law and is plainly wrong.[7]

## IV.    ARGUMENT

Here, Red Box has completely failed to meet its burden of establishing any claims, much less all 19 of the asserted claims, are invalid under 35 U.S.C. §101. Red Box's motion is a good example of an overly broad application of the §101 exceptions to patentability that the Supreme Court expressly cautioned against in both the *Mayo* and *Alice* cases, recognizing that: (i) "too broad an interpretation of this exclusionary principal could eviscerate patent law . . .[f]or all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas . . ." *Mayo*, 132 S. Ct. at 1293, and; (ii) "tread carefully in construing this exclusionary principal lest it swallow all of the patent law." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014).

### A.    The asserted claims do not preempt a field.

---

[7] Note the only authority cited by the *TNS Media Research* court for this startling position was the concurring opinion of one Federal Circuit judge, Judge Meyer, whose solitary opinion in contradiction of the statute has not been adopted by the Federal Circuit or elsewhere.

In order to avoid the overboard application of §101 it is necessary to focus on the underlying purpose of the section, which the Supreme Court has repeatedly emphasized is to prevent the pre-emption of large fields of discovery and development.  See e.g. *Alice*, 134 S.Ct. at 2355; *Mayo*, 132 S. Ct. at 1294 ("upholding the patents would risk disproportionately tying up the use of the underlying natural laws, inhibiting their use in the making of further discoveries"); *Bilski v. Kappos*, 561 U.S. 593, 610 (2010) (patent ineligible because it "would preempt use of the approach in all fields, and would effectively grant a monopoly on an abstract idea").  Courts generally are reluctant to hold claims ineligible under § 101 unless there is a genuine concern that upholding the patent would risk unduly preempting public access to a patent-ineligible concept such as a law of nature or natural phenomenon.[8]  Absent such concerns, inventions generally withstand § 101 review.[9]

Here, the preemption analysis supports patent eligibility.  Verint's inventions are limited to specific call center applications with specific limitations that limit the claimed methods to narrowly solutions of the problem addressed by the invention.  The patents have generally been

---

[8] *See, e.g., Gottschalk v. Benson*,  409 U.S 63, 64 (1972) ("The claims were not limited to any particular art or technology, to any particular apparatus or machinery, or to any particular end use. They purported to cover any use of the claimed method in a general-purpose digital computer of any type."); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015) (collecting cases where ineligible claims were unduly preemptive); *In re BRCA1 and BRCA2*, 774 F.3d 755, 763-64 (Fed. Cir. 2014) ("The number of covered comparisons is unlimited. The covered comparisons are not restricted by the purpose of the comparison or the alteration being detected.").

[9] *See e.g.  Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *Enfish, LLC v. Microsoft Corp.*, 882 F.3d 1327, 1336 (Fed. Cir. 2016); *DDR Holdings, LLC. V. Hotels.com L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014); *Ass'n for Molecular Pathology*, 689 F.3d 1303, 1337 (Fed. Cir. 2012), *rev'd on other grounds*; *ContentGuard Holdings, Inc. v Amazon.com Inc*, No.2:13-cv-01112, slip. op. at 5 (E.D. Tex, Oct. 5, 2015) (denying motion JMOL for defendant under §101 regarding claims directed to digital content usage rights, noting, *inter alia*, that the invented methods and systems do "not foreclose other ways of solving the problem" and "recite a specific series of steps that result in a departure from the routine and conventional.") (internal quotations omitted); *SimpleAir, Inc. v Google Inc*., 136 F.Supp.3d 745, 750 (E.D. Tex. 2015)(denying motion for summary judgement of invalidity under §101  for claims directed to "methods and systems of using central broadcast server to package and transmit data from online source to remote computing devices") (internal quotations omitted);  *Helios Software, LLC V. SpectorSoft Corp*., No. 12-081-LPS, 2014 WL 4796111 at *16 (D. Del Sept. 18, 2014) (holding patent eligible claims that "relate to remotely monitoring data associated with an Internet session").

in force for many years (most are near the end of their life) and there is no evidence offered that any claims of the patents have inhibited developments in the industry or preempted a field. In fact, Red Box has presented neither evidence nor any argument that any asserted claim would preempt any significant field of activity or monopolize a particular area in a manner that would broadly inhibit development of technology. Indeed, it must be noted that Red Box has vigorously asserted, and its expert Mr. Stillerman has opined, that it does not infringe directly or indirectly any of the asserted patent claims. See Expert Report of Robert Stillerman On the Non Infringement of The Patents-in-Suit ¶ 31 Attached as Exhibit 2. If all these claims are in fact directed to "abstract concepts" that effectively preempt whole technology fields or large portions thereof, it is difficult to see how Red Box and Mr. Stillerman could argue in good faith they don't infringe any of these claims—not a single one.

**B.**     **The asserted claims are not directed to abstract concepts.**

As is well established, to prevail in its motion for summary judgment that all the asserted claims are invalid under 35 U.S. C. §101, Red Box "must show that the challenged claims first fail the 'ineligible concept' step *and* then also fail the inventive concept step of the *Alice* test." *SimpleAir, Inc.*, 136 F. Supp. 3d at 750; s*ee also Alice.*, 134 S.Ct. at 2355; *Mayo*, 132 S.Ct. at 1294. Here, Red Box argues that all the patent claims are directed to "abstract ideas" because they "*involve* methods of recording, monitoring analyzing and or securing electronic communications." Dkt. 145 at 9. (emphasis added). As the Federal Circuit recently pointed out, however, whether the claims "involve" a patent ineligible concept is inadequate to determine the first step of the Mayo/Alice inquiry of what the claims are "directed to". *Enfish, LLC*, 882 F.3d at 1335. Instead, the Court must look to the claims "considered in light of the specification" to determine whether "their character as a whole is directed to excluded subject matter." *Id*. (quoting *Internet Patents Corp.*, 790 F.3d at 1346).

13

Further, as noted by the Federal Circuit in *DDR Holdings*, where the Court upheld the patentability of claims directed to a business method of generating composite web pages, the varying characterizations of the so called "abstract ideas" by Red Box underscores that the claims at issue here are not like those in Alice or other cases where the Federal Circuit found patent ineligible claims. *See DDR Holdings*, 773 F.3d at 1266.  Indeed, Red Box variously argues the abstract ideas to which the claims are directed are: (i) "processing…data and information in telecommunications," (Dkt. 145 at 1); (ii) "recording monitoring, analyzing and or securing electronic communications, "*Id. at* 9; (iii) "protecting sensitive information" *Id.*; (iv) "data recognitions and storage," *Id. at* 12; (v) "monitoring employee workstations," *Id*. at 14, and (vi) "recording and analyzing communication streams" *Id*. at 15.  In short, Red Box asserts many "abstract ideas" have been patented by Verint.  If in fact Verint had patented all of these broad abstract ideas as Red Box argues, Verint would seemingly have preempted or cornered the entire computer assisted communication field—a fact not argued or supported by any evidence.  In fact, what the Red Box claims show, is that Red Box has simply identified a concept "involved" in the various asserted claims and taken the analysis of the claims no further.  They simply ignore the specifications and most of the claim limitations to broadly assert every claim is directed to an "abstract concept" Such argument, wholly lacking in analysis of the claims, is improper and cannot carry Red Box's burden of proving invalidity.

      **1.**    **The asserted claims of the '854 Patent are not directed to an abstract idea of protecting sensitive information.**

Red Box's argument that the asserted claims of the '854 Patent are ineligible for patent protection is striking in its lack of analysis of the actual claims.  While Red Box quotes in its argument select portions of statements from Verint's complaint and certain evidence from Red Box's own documents which support infringement claims, Red Box fails to discuss '854 Patent

14

claim elements at any length and never reviews the claims "as a whole." Dkt. 145 at 9-12.  Such deficient analysis alone is reason to deny Red Box's motion for failure to carry its burden. Further, Red Box's argument is filled with gross generalizations, like "humans have been protecting sensitive information for centuries" that have nothing to do with an analysis of the claims in the context of the call center discussed in the specification.  Similarly Red Box includes unsubstantiated assertions like the "'854 Patent merely instructs call-centers 'to engage in well understood, routine, conventional activity previously known to the industry'"[10] without submitting any evidence of what was in fact routine in the industry.  In short, the entire argument regarding the '854 patent is misdirection, devoid of any analysis of the claims actually at issue.

The reason Red Box avoids discussion of the claims themselves is that review demonstrates that the claims are not directed to "abstract concepts."  For instance, each of the asserted claims of the '854 are clearly limited to call centers where an "agent" working on a "communication network" has an "interactive communication responsive to an agent request" where the communication is routed to the agent, the communication is recorded at least in part, information to be protected is "electronically identified" (i.e. "automatically analyzed with respect to a set of rules") and steps are taken to protect the electronically identified information and/or render it "unintelligible" to the user.  This is not an abstract concept but defined methods to address a unique issue in the call center industry where large volume of communications must be handled daily by an agent and certain information must be recorded while other information must be received but not recorded to protect its confidentiality.  Simply stated it's a unique and defined situation that is not an "abstract concept."  Red Box discusses none of the above

---

[10] Again, the allowance of the patent by the patent office, which requires novelty for issuance of a patent, refutes this contention that the patented claims were a "conventional activity previously known in the industry" at the time of the invention.  In any case, that is not the issue for 101 analysis.

elements, much less the defined procedure "as a whole" of which all the elements are a part. Moreover, contrary to Red Box contentions, the steps of the claimed methods cannot be performed by a single human but the steps require automated simultaneous integrated steps, electronic communications and recording beyond individual human ability.

Compare the instant case to the claims found patentable in *Sample Air, Inc. v. Google Inc.*, where the defendant tried to argue the clams were directed to the "abstract idea of packaging and transmitting information." 136 F. Supp. 3d 745, 751 (E.D. Tex. 2015). Rejecting the argument, the court held that "defendants do not explain how such characterization, which ignores significant claim limitations, encompass the invention claimed in the Patents-in-Suit. Such conclusory argument, without more is not enough to meet their burden of establishing the Patents-in-Suit are directed to an abstract idea." *Id.*[11] The Court in *Sample Air* emphasized that the Alice test is "not whether the Court is able to reach into a patent and extract an abstract idea" which would render the first step of an *Alice* analysis "a mere formality" but that the Court must examine the Patent-in-Suit and arguments and evidence of record to "determine whether [the claims] are directed to an abstract idea." *Id.* (citing *Alice*, 134 S.Ct. at 2355; *See also*, *Helios Software, LLC v. SpectorSoft Corp.*, No 12-081-LPS, 2014 WL 4796111 at *16-17 (D. Del. Sep. 18, 2014) (holding patent eligible claims that "relate to remotely monitoring data associated with an Internet session" and "controlling network access" because defendant "makes no effort to show that these ideas are fundamental truths or fundamental principles of patenting which

---

[11] For ease of reference the essential elements of the claims at issue were: directed to "a system to transmit data from an information source to remote computing devices" where the elements of the claim required only "a central broadcast server configured to receive and process data from an information source"; an information gateway communicatively connected with the broadcast server, the gateway configured to build data blocks and assign addresses to the blocks; a transmission gateway coupled with the central broadcast server and information gateway configured to prepared addressed data bocks for transmission to receivers communicatively coupled to remote computers and initiate transmission whether or not the remote device was online. *Sample Air, Inc.,* 136 F. Supp. at 477-78.

preempt the use of basic tools of scientific and technological work."); *ContentGuard Holdings, Inc. v Amazon.com Inc*, No.2:13-cv-01112, slip op at 8, 10-11 (E.D. Tex, Oct. 5, 2015) (denying motion JMOL for holding that claims were not directed to abstract idea of enforcing usage rights and restrictions "at least because they are directed toward patent eligible methods and systems of managing digital rights using specific and non-generic 'trusted' devices and systems" and further noting that the claims do "not foreclose other ways of solving the problem.") (internal quotations omitted).

> **2.    The asserted claims of the '324 and '386 Patents are not directed to an abstract idea of data recognition and storage.**

Again, Red Box's argument is striking for its lack of discussion of critical elements of the asserted claims and the asserted claims as a whole.  Red Box's arguments rest on broad over generalization of the claims and conclusory arguments that lack any critical analysis.  A review of the asserted claims establishes they are not merely directed to "data recognition and storage." In fact, they are directed to a very narrow and new area of technology at the time of the invention, the use of "data packets" which created unique challenges in call center operations in part because data packets are received in non-sequential bursts of data as opposed to continuous analog signals.

The claims provide a method of analyzing and sorting these packets so that they can be stored and used in an effective and useful way for call center operations.  For instance, claim 18 of the '324 patent requires, *inter alia*, "**identifying data** within the audio data packets **at a data analysis engine** (i.e. "a computer application used for the systematic investigation of data flow") that is **communicatively connected to the switch by a second network**, the **identifying being based on at least one predetermined parameter** associated with a payload of the audio data packets."  These are indisputably, concrete claim elements, using specific devices arranged in a

specific order to solve a specific problem, and this is only one of the concrete steps of the method—the total claim is even more narrow.  In any case, this element alone establishes that the claim is far more specific and concrete than "an abstract idea of data recognition."  Likewise claim 27 of the '386 patent requires "identifying at the **data analysis engine** (i.e. "a computer application used for the systematic investigation of data flow") **an interaction to which the data packets belong responsive to information** included within the data packets."  Again, this claim element is concrete, uses specific devices and addresses a specific issue with precise limitations—it is not directed to the abstract idea of data recognition.  In sum, review of the asserted claims demonstrates that each asserted claim uses specific devices, in a specific method with critical analytic steps to sort and identify a particular type of transmitted data, data packets, to address a problem in the call center business.  This is far more focused than the abstract idea of data recognition and storage.  *See e.g Helios Software,* LLC, 2014 WL 4796111 at *17 (claims related to remotely monitoring Internet session and controlling network access held patent eligible, and noting the implementation by computer added meaningful limitations where the computer played a significant role in "real time data capture and transmission and reception.").  Indeed, as noted by Red Box, the inventions claimed in the '324 and '386 patents "advantageously allowed for the improved monitoring of traffic so as to identify which ones(s) of a possible plurality of data and voice interactions might warrant further investigation whilst slowing statistical trends to be recorded and analysed." '324 patent col 2, ln 43-47.

> **3.    The asserted claims of the '798 and '220 Patents are not directed to an abstract idea of monitoring an employee workstation.**

Again, without discussing the claims in any detail, Red Box argues that the claims of the '798 and '220 patents are directed to an abstract idea: "monitoring an employee", and include steps equivalent to "those a person could take the physical world." Dkt. 145 at 14. Red Box goes

so far as to suggest the patent methods could be achieved with "a network of human eavesdroppers." *Id* at 15. These absurd and unsupported conclusions are readily refuted by a review of the claims. The claims require the simultaneous monitoring of multiple workstations to capture simultaneously in complete detail audio conversations and on screen computer changes implemented by an agent. Even if all the humans "eavesdroppers" had photographic memories and you could assign one eavesdropper for every workstation (doubling your workforce at a minimum), it is not humanely possible for the eavesdroppers to capture and retain all of these transactions in every detail and retain them for an unlimited duration. The absurdity of Red Box's argument demonstrates the futility of their bald assertion that the patents are directed to the "abstract ideas of monitoring an employee workstation."

While the claims speak for themselves and have been discussed *supra*, it is critical to emphasize a few elements that undeniably take these claims outside the realm of the abstract concept of employee monitoring. First, the claims are clearly directed to simultaneously monitoring both on screen activities and a telephone extension in a call center over which an interaction is happening with a customer. Second the claims require the very specific step of determining "sequential screen changes" while simultaneously recording the phone conversation throughout the screen change process. Third, and perhaps most important, the claims require the play back of the screen changes and the audio "in substantial synchronization" (a feat impossible for a human to do unaided, even assuming they has some ability to instantly draw screen changes and perfect recall of every detail of the transaction). In short, the claims are obviously directed to a very specific, non-abstract process found in modern call center operations where simultaneous audio and computer activities are occurring that are interdependent. The invention, novel at the time it was conceived as confirmed by the grant of the patent, allows a single person

to monitor multiple work stations and have ability to completely play back all aspects of a

transaction for quality control, training, etc.  The argument that these claims are directed to the

abstract concept of employee monitoring is just absurd.

> **4.      The asserted claims of the '763 Patent are not directed to an abstract
> idea of recording and analyzing communication streams.**

Once again, Red Box avoids any discussion of the actual claim language and resorts to

broad mischaracterizations of the claims, ignoring clear limitations.  Contrary to Red Box's

argument, the '763 Patent does not only include the addition of the concept of a "graphical user

interface." Dkt. 145 at 16. Rather the claims require a graphical user interface "configured to

present **an integrated view** of a portion of the communication recorded by the recorder"

(emphasis added) **and** graphical user interface presents "an **integrated view containing a first

visualization of the portion of the communication and a second visualization of at least one

event that occurred during the communication, the second visualization overlaying the first

visualization.**"  This novel invention (again confirmed by the grant of the patent) is clearly more

than just analyzing a communication with a graphic user interface, but is specifically directed to

the use of a graphic interface in a narrow way to facilitate the analysis of an **integrated**

communication stream for quality control.  In short, the '763 claimed a novel tool for analyzing a

multi-media communication stream—not an abstract concept of analyzing a data stream. Again,

nowhere does Red Box provide any evidence the claimed invention has in fact broadly claimed

the abstract concept of analyzing a communication stream. Indeed, if the claim of this [ten year

old patent] where as broad as Red Box asserts, it would have long ago preempted the very

crowded market of communication data analytics that is alive and well today.

**V.**     **THE ASSERTED CLAIMS ALL CAPTURE INVENTIVE CONCEPTS.**

Since the asserted claims are not directed to abstract concepts, there is in fact no reason to continue the analysis under §101 and Red Box's motion to dismiss should be dismissed. Nonetheless, it is worth noting that even if the asserted claims here were found to be directed to "abstract concepts" each asserted claim includes an inventive concept that would nonetheless make the claim patentable.  First, contrary to Red Box's conclusory arguments that the claims lack inventive concept because they employ generic or conventional devices, each of the asserted claims are in fact "ordered combinations" sufficient to ensure the patents capture inventive concepts. See e.g. *Contentguard v. Amazon*, No.2:13-cv-01112, slip op at 10-11 (E.D. Tex Oct 5, 2015), citing *Alice*, 134 S. Ct at 2355.  Further, just as in *Contentguard* the patents disclose "particular solutions for [a] problem . . . that (1) do not foreclose other ways of solving the problem and (2) recite a specific series of steps that result in a departure from the routine and conventional." *Id*. Again, it must be emphasized that Red Box has offered no evidence with its motion that any of the proposed methods are in fact routine of conventional. *See SimpleAir Inc*., 136 F.Supp. 3d at 751(finding claim's had an inventive concept and noting plaintiffs argument that defendant provided "no evidence the elements were conventional or routine" and defendant's had simply "isolate[d] a half dozen words of the claims rather than addressing the clams as a whole . . .").

Here, each of the claims uses computers and associated devices to improve on process and address new problems arising in the field of call center operation, just like the claims found patentable in *DDR Holdings, LLC*, where the claimed solution "[overcame] a problem specifically arising in the realm of computer networks." 733 F.3d at 1249 (Fed Cir 2014).  The inventions made by Verint in this case do "not simply use a computer to automate [what] was done previously, but rather improves upon what was previously done with computers, solving a"

21

call center specific problem. *See Motio, Inc. v. BSP Software LLC*, 154 F.Supp.3d 434, 441 (E.D. Texas 2016) (holding that even though claims were directed to an abstract idea of version control, the claims contained an inventive concept by reciting an "automatic agent" distinct from a business intelligence system, which agent improves functionality of the system, and therefore provides "only one method of version control that does not preempt every application of the idea of maintaining versions."). Note the "automatic agent" of the *Motio* case is analogous to the: (i) "electronic identification" (i.e. automatically analyzing a communication with respect to set of rules) of information to be protected in the '854 Patent; (ii) the "analysis engine" (computer application used of systematic investigation of data flow) used in the '324 and '386 Patents; (iii) the automated "substantial synchronization" of screen and audio claimed in the '798 and '220 Patents, and; (iv) the integrated view with dual visualizations claimed in the '763 Patent. In short all these claims have inventive concepts.

Red Box argues that merely limiting the claims to a field of use does not transform them to patentable subject matter (Dkt. 145 at 17), but as with all their argument they miss the point made here with respect to the Verint inventions.  It's not just that the inventions are limited to a field of use, but that the claims solve real problems in the field with concrete methods that are novel and include inventive concepts.  This is apparent when the claims are reviewed in detail and evaluated as a whole, rather than in the cursory, conclusory fashion of red Box where they focus barely on the claims at all, citing to just a few words in the claims.

## VI.    THE DEPENDENT CLAIMS ADD CONCRETE AND INVENTIVE ELEMENTS TO THE CLAIMS

As a final argument, Red Box lists the asserted dependent claims from the Patents-in-Suit and then, without analyses or discussion of any specific limitation in these claims, blithely asserts all the dependent claims fail to "add an inventive concept."  Red Box brief at pg. 18.  Of

course, for all the reasons stated above the independent claims are patentable and so, consequently are these independent claims.  Further, as is clear from review of the dependent claims, they all contain concrete specific elements that add to the inventive concepts captured in the patents.  For example, claim 2 of the '854 patent adds the specific and novel concept of stopping and then restarting the recording of a call center transaction in response to the "electronic identification" of information to be protected required by the independent claim. This was at the time of invention a new and novel idea for protection of customer information and clearly adds an "inventive concept" to the claims of the '854.  The other asserted dependent claims similarly add concrete elements that further the inventive concepts of the patents.  All these dependent claims are appropriated subject matter for patent protections under 35 U.S.C. 101.

## VII.   <u>CONCLUSION</u>

Accordingly, Reb Box's motion for summary judgment of patent invalidity under 35 U.S.C 101 of the Patent Law should be denied.

Dated:    New York, New York
          September 2, 2016

Respectfully submitted,
**FOX ROTHSCHILD LLP**

By:_____

    Ernest E. Badway
    Ryan N. Miller
    100 Park Avenue - Suite 1500
    New York, New York 10017
    Telephone:  212-878-7900
    Fax:  212-692-0940
    *Attorneys for Plaintiffs*
    *Verint Systems Inc. and*
    *Verint Americas Inc.*

*Of Counsel*:
Joseph F. Posillico, Esq. (*pro hac vice*)
Frank T. Carroll, Esq. (*pro hac vice*)
Samuel Israel, Esq. (*pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Telephone: (215) 299-2000