# ALSTON & BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-922-3881
www.alston.com

Deepro R. Mukerjee     Direct Dial: 212-210-9501     Email: deepro.mukerjee@alston.com

January 20, 2017

**VIA ECF and UPS**

The Honorable Katherine B. Forrest
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re: *Verint Systems Inc., et al. v. Red Box Recorders Ltd.*, Case No. 14-5403-KBF
        ***Letter Motion in Limine to Preclude Admission into Evidence of Any Documents Produced on January 5, 2017***

Dear Judge Forrest:

    Further to the Court's January 17, 2017 conference, and pursuant to Federal Rule of Civil Procedure 37(c)(1), **Red Box moves for the preclusion of Verint's use of documents produced over seven months after the close of fact discovery**. That January 5 production included 562 pages that reference royalty rates and licensure of Verint's patents. But fact discovery closed in May of 2016 and this is literally Verint's third effort to produce responsive documents well after the close of fact discovery. As such, this production is in stark contravention of the Court's Scheduling Order (D.E. 18) and Red Box would be prejudiced if Verint is allowed to use these documents at trial.

    The Court has broad discretion to sanction a party under Rule 37 "based on all the facts of the case." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012). The purpose of Rule 37(c) is "to prevent the practice of 'sandbagging' an adversary with new evidence." *Id.* (*citing Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). The Second Circuit set out factors to consider before excluding evidence obtained after the end of discovery: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the [evidence]; (3) the prejudice suffered by the opposing party as a result of having to [respond to] the new [evidence]; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997). Each factor supports precluding Verint from relying on these recently produced documents at trial.

**Background**

    The events that led to the January 5 production illustrate the prejudice Red Box would suffer were Verint permitted to rely upon these belatedly-produced documents. On May 12, 2016, at the first deposition of Mr. Andy Pham—Verint's in-house counsel and Rule 30(b)(6) witness—

January 20, 2017
Page 2

Red Box learned that Verint had not produced a multitude of responsive documents. Accordingly, Red Box's counsel requested such documents on the record. (Ex. 1 at 253:10-254:9).

Well over a month later, counsel for Red Box again requested those same documents during Verint's deposition of Red Box's damages expert, Mr. Hofmann. (Ex. 2 at 12:7-15, 57:17-58:6). Red Box made two more requests on August 8 and 12. (Ex. 3). Not until August 16, 2016—months after the close of fact discovery—did Verint produce 623 pages of related documents. In light of that production, the parties held a meet-and-confer on August 25. Red Box demanded a continuation of Mr. Pham's deposition regarding both the August 16 production and Mr. Pham's improper and later-withdrawn rebuttal "expert report" on damages.[1]

During the continued deposition of Mr. Pham on October 26, Red Box learned of yet more, highly-relevant documents that Verint had not produced. Again, counsel for Red Box requested the production of those documents. (Ex. 5 at 398:9-399:13, 421:6-422:20, 438:23-439:12, 451:22-452:5). In response, counsel for Verint had no choice but to agree to search for the documents at issue and, when pressed by Red Box, stated that they would provide a certification as to why the August 16 documents had not been previously produced. (*Id*. at 421:6-422:20, 454:1-10). Two weeks passed and Verint remained silent. On November 11, Red Box reiterated its request for documents as well as the promised certification. (Ex. 6 at 7-8).

On November 21 and 22, Verint produced another 221 pages of documents. On December 2, counsel for Verint provided a letter—instead of a certification—regarding Verint's late productions. (Ex. 7). That letter did no more than vaguely suggest that there were "inadvertent" "errors" that led to the non-production of these documents. Counsel for Red Box immediately requested a meet-and-confer. (Ex. 6 at 4).

On December 7, the parties held that meet-and-confer. Counsel for Verint—while noting that there likely would not be any remaining non-produced documents—agreed to provide a proper certification regarding all of the late productions no later than December 14. On that date, counsel for Red Box asked when they would receive Verint's promised certification. (*Id*. at 2). Counsel for Verint replied that Verint would "shortly" provide the certification. Over two weeks later, on December 30, counsel for Red Box requested another update. (*Id*. at 1). Counsel for Verint did not respond. On January 4, 2017, counsel for Red Box again requested an update. Finally, counsel for Verint replied that there would be an additional production. (*Id*.). And on January 5, 2017, Verint made its third belated production of 562 pages. Despite that production, Verint did not provide a certification—opting instead to send a second letter. (Ex. 8).

---

[1] Despite bearing the burden on damages, Verint did not file a related opening expert report. Nonetheless, on July 22, 2016, Verint served a rebuttal "expert" report by Mr. Pham in response to Red Box expert Mr. Hofmann's report. Red Box objected to the Pham "report" on July 27, 2016 as being in contravention of Rule 26 based on Mr. Pham's lack of qualifications as an expert and Verint's failure to file an opening report per the Court's Scheduling Order. Verint withdrew Mr. Pham's report on August 16, 2016. (Ex. 4).

January 20, 2017
Page 3

**The *Softel* Factors Weigh in Favor of Preclusion**

*1. Verint's Explanation for the Failure to Comply is Insufficient:* Through eight months of belated productions, Verint's only explanation has been that its failures to produce were the result of an "inadvertent processing error" and/or a "clerical error." (Ex. 8, *see also*, Ex. 7). Not only is that an insufficient reason for why the documents were not produced until seven weeks before trial, it also fails to address why the documents were trickled out in a series of discrete productions over a prolonged period. *See Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 297 (S.D.N.Y. 2001) (finding the first factor favored preclusion because Plaintiffs' justification was "simple oversight"). This factor indicates just how lacking Verint's purported explanation is, given that Red Box provided notice in May of 2016 that relevant documents were missing. Why Verint was still producing documents in January of 2017 cannot be explained by a simple reference to some unidentified "processing error." The first factor weighs in favor of the preclusion of the January 5 documents.

*2. Importance of the Evidence:* Setting aside Red Box's notices of deficiency, the January 5 documents are responsive to Red Box's document requests, served in February of 2015. (*See* Ex. 9, Doc. Request Nos. 35-41). And Red Box subsequently requested such documents at no less than three separate depositions. But, this second factor weighs in favor of preclusion because Verint described the January 5 documents as "ancillary" (three times) and "redundant." (Ex. 8). If Verint intended to rely on these documents, Verint should have produced them in the original production of January *2016*. But it did not. Verint cannot now try to backdoor these documents at this late hour.

*3. Potential Prejudice Suffered by Red Box:* The prejudice to Red Box, were Plaintiffs permitted to rely on these documents at trial, is manifest. Without the remedy afforded by Rule 37, Red Box would have to either conduct a hastened deposition of a Verint witness while preparing for trial or be "sandbagged" by the use of these new documents before a jury. Either result is highly prejudicial and, thus, militates in favor of preclusion. "Although preclusion is a drastic remedy, . . . it is warranted where, as here, plaintiff waited until the proverbial eleventh hour before trial . . . ." *Episale v. Peabody*, 2002 WL 34453291, at *2 (N.D.N.Y. Oct. 24, 2002). Throughout the past eight months, Red Box has, at its own expense, been compelled to force Verint to produce relevant documents, to review each belated production, and to take depositions using documents which were only a subset of what existed. *See Ritchie Risk-Linked Strategies*, 280 F.R.D. at 162 (third factor weighed in favor of preclusion because defendants suffered substantial prejudice from proceeding through fact discovery without a full understanding of plaintiffs' claim). It is time for such prejudice to end. Verint should not be allowed to flout the Court's Scheduling Order. Any other result would prejudice Red Box and reward Verint for its own deficiencies.

*4. Possibility of a Continuance:* Regarding the fourth and final *Softel* factor, this Court could not have been clearer that there will not be an adjournment of trial.

**Conclusion**

For the foregoing reasons, Red Box respectfully submits that the Court should preclude Verint from relying upon the documents that were produced on January 5.

January 20, 2017
Page 4

                                             Respectfully submitted,

                                             Deepro R. Mukerjee

Enclosures (filed under seal)

cc: Attorneys of record